## McDonald *v.* Unaka Timber Company.

### (*Knoxville.* October 15, 1889.)

1. MEASURE OF DAMAGES. *Market value at place of delivery.*

   Market value at place of delivery is the true measure of damages for negligent destruction of timber by one who has contracted with the owner to cut and deliver it at a specified place "in a good, workmanlike manner."

2. SAME. *Proof of market value.*

   If market value at place of delivery be incapable of direct proof, it may be shown indirectly by proof of market value of the commodity involved, at other convenient and accessible points, where transactions of like magnitude had, or could reasonably have, occurred, the cost of transportation being deducted from the latter value.

   Cases cited and approved: Henegar *v.* I. C. Company, 1 Cold., 241; Fort *v.* Saunders, 5 Heis., 487; Railroad *v.* Mason, 11 Lea, 116; Railroad *v.* Hale, 85 Tenn., 69.

3. SAME. *Same.*

   Where the only direct evidence of the existence of a market value for a commodity at a particular place is the opinion of witnesses based wholly upon two comparatively insignificant transactions, the indirect evidence of market value at other accessible points will not be excluded, especially where it appears that, for want of material, a transaction of the magnitude involved could not have occurred at such place.

4. PAROL EVIDENCE. *Admissible, when.*

   Parol evidence, that shows the situation and knowledge of the parties at time of entering into a written contract, is not obnoxious to the rule excluding evidence to enlarge, restrict, or vary the terms of such contract.

McDonald *v.* Unaka Timber Company.

5. COSTS. *Decree for not reversed unless error manifest.*

Adjudication of costs rests so largely within the Court's discretion that his decree on this point will not be reversed unless error is very manifest.

FROM KNOX.

Appeal from Chancery Court of Knox County. H. R. GIBSON, Ch.

LUCKY & YOE for McDonald.

WEBB & McCLUNG for Unaka Timber Co.

FOLKES, J. This is a bill by complainant to recover judgment upon a note for two thousand dollars, executed by the defendant company. The defendant, by answer and cross-bill, alleges that the note sued on was the last installment upon the sum of six thousand five hundred dollars, which had been agreed to be paid to complainant by defendant, in consideration of complainant's undertaking to cut timber belonging to defendant, in Yancey County, N. C., and deliver same in Cane River, in said county, "in a good, workmanlike manner." This contract was reduced to writing on March 20, 1888, and thereupon complainant entered upon the performance of his part of the contract.

For the timber company, it was claimed that McDonald had breached his contract, among other things, in this: That he had, instead of putting the timber in the river in a good, workmanlike manner, handled the timber in such a reckless and unskillful way as to totally destroy a great quantity thereof. The company sought to set off against complainant's demand the damages resulting from the destruction of the timber in the manner above stated.

Much proof was taken on the matters at issue, and, upon final decree, the Chancellor found in favor of the company, fixing the number of feet of timber destroyed by complainant, and ascertained its value to be $1,393.75, which was deducted from the note for $2,000, with interest, leaving a balance in favor of complainant of $606.25, for which judgment was given, and defendant was taxed with three-fourths of the costs, the balance being charged to complainant.

Both parties appealed, and have assigned errors.

Many matters that were seriously litigated in the Court below have been eliminated by an agreement of counsel; and the case is before us now only on two propositions—one on behalf of defendant concerning the taxation of three-fourths of the costs against it, and one on behalf of the complainant in regard to the measure of damages adopted by the Chancellor. It is agreed that the number of feet of timber destroyed by complainant's negligence has been correctly fixed by the decree below.

McDonald *v.* Unaka Timber Company.

The contention on behalf of complainant is that the Chancellor erred in adopting as the measure of damages the value of the timber at Knoxville, and that he should have taken the market value at Cane River, in Yancey County, N. C., the place where, by the terms of the contract, the timber was to have been delivered. The decree upon this point is as follows: "The Court is of opinion that the Unaka Timber Company bought for the Knoxville market the logs which McDonald agreed to put into Cane River; that said McDonald knew this fact on March 20, 1888, and that both of said parties knew the said market price. The Court is therefore of opinion that the amount of this damage should be fixed and controlled by the market price of the lumber in the log at Knoxville, less the cost of rafting from Cane River to Knoxville; and the Court finds the market value at Knoxville to be ten dollars per thousand, and the cost of rafting thither $2.50 per thousand, thus making the damage caused by breach of the contract $7.50 per thousand." And the amount of the decree was arrived at upon this basis.

In his assignment of errors complainant does not challenge the fact alleged in the pleadings, and sustained by the proof, that he knew before and at the time the contract was entered into, that the defendant had purchased the timber and had made the contract with the complainant with reference to its value and use at the Knoxville market, where the defendant's saw-mill was situ-

ated, and where it dealt in logs and lumber, and for no other purpose. The objection, as stated in the assignment of error, is that "the conversations and knowledge and information were all had and known before contract was signed; and the contract being in writing, the presumption is conclusive that the writing contained entire terms; and, no mistake or fraud being averred, such parol proof was incompetent."

It is unnecessary to say in this connection whether the action of the Chancellor in overruling the objections, as made, was correct or not. The rule of evidence invoked had no application to the case made in the proof.

The parol proof objected to does not enlarge, restrict, or vary *the terms* of the written contract in any respect, but merely shows the situation and knowledge of the parties at the time the contract was entered into.

It is to be observed that the implication from the knowledge by the contracting parties of the special circumstances and the objects contemplated by the contract, required the performance of no additional or different act on the part of the complainant to fulfill the contract. The measure of his duty remains as fixed in the contract; the knowledge brought home to him in the proof of the special and particular use to which the timber was to be put, could only serve to admonish him that upon the breach of his contract he might be called upon to make good the loss that might re-

sult to the other party, to the extent that compensation for the injury might be found to depend upon the value in the Knoxville market.

The principle upon which such testimony, where sufficient for that purpose, is admissible, and the office it is to perform when admitted, is well stated in the much quoted English case of *Hadley* v. *Baxendale*, 9 Exch., 353, which has been very generally adopted in America. "Where two parties have made a contract, which one of them has broken, the damages which the other ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either as arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of a breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under the special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in contemplation the

amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract." *Messmore* v. *The N. Y. S. & L. Co.*, 40 N. Y., 422.

While the rule, as above stated, has been generally accepted as correct, yet in the practical application of it in extending the liability so as to embrace damages brought within the contemplation of the parties by the communication of special circumstances, there has been some conflict of opinion.

But the view we have taken of the case at bar renders it unnecessary for us to pursue the subject further.

Whether the facts within the knowledge of the complainant, to which the proof objected to was directed—to wit, that the timber was bought and the contract made for the purpose of being sold or sawed by the defendant at its mill in Knoxville—would be sufficient to authorize the Chancellor to fix, as a matter of law, the measure of damages at the market value in Knoxville, it is not necessary for us to decide. If the testimony had been admissible for the purpose, and under the rule as already stated, its *sufficiency* would be quite another question, and one which need not be determined, inasmuch as the result reached by the Chancellor is unquestionably correct from another point of view.

The elementary rule for the measure of damages rests upon the principle of compensation to

McDonald *v* Unaka Timber Company.

the party injured for the loss sustained, with the least burden to the party guilty of the breach consistent with the idea of fair compensation, and with the duty upon the party injured to exercise reasonable care to mitigate the injury, according to the opportunities that may fairly be, or appear to be, within his reach.

The application of this rule, in the majority of cases where there is a breach of contract to deliver certain goods or property at a particular time and place, leads to the adoption by the Courts of the market value of the property at such time and place. This is predicated upon the fact that, ordinarily, the party injured can make himself whole, or save further loss by purchasing or selling, as the case may be, at such market price, and then recover of the party guilty of the breach the difference between the contract price, or value, and the market price.

If, however, there be no market price at such place, by reason of the want of dealers or the want of the commodity, then the actual value at such place can be ascertained by proof of market value in other markets, with the cost of transportation added or deducted, as the case may be, such other markets to be at the nearest points where goods of the quality and quantity can be bought or sold. Under such circumstances, and perhaps others that might be named, the market price, or value at the place of delivery, may be shown by proof of value at the market where such com-

modities are usually sent for sale, and the cost of transportation to or from the place of delivery. 2 Suth. on Dam., 373, and cases cited in notes 2 and 3; Wood's Mayne on Dam., 241, 242. See also *Henegar* v. *Isabella Copper Company*, 1 Cold., 241; *Fort* v. *Saunders*, 5 Heis., 487; *L. & N. R. R. Co.* v. *Mason*, 11 Lea, 116; and *Railroad Company* v. *Hale*, 85 Tenn., 69, where these rules have been applied.

Under the rules as above laid down, the Chancellor was right in considering the proof of value at the Knoxville market, which is shown to have been the nearest point at which timber of the quality and quantity could have been purchased or sold, and that it was the market to which such timber from the place of delivery mentioned in the contract was generally shipped, as showing market value at place of delivery. It is, however, insisted in argument by counsel for complainant that there is proof of market value at Cane River for such timber, which prevents consideration of market value elsewhere; and the testimony of the witnesses Peck, Lewis, Hunnicut, Belton, Losey, and Mc-Donald is cited to sustain this contention. It is true that the first three and the last witness named do say that there was a market value there, and fix it at four dollars per thousand feet for No. 1, and three dollars for No. 2; but only two transactions are given—one by Lewis of 13,503 feet, and another by Losey of 11,000—while Belton proves, and it is by no one contradicted, that at the time

of complainant's default there was no such timber
to be had in that neighborhood, certainly not in
any quantity. It is shown that all such timber
anywhere in reach of the river had been cut and
marketed; and those engaged in the business of
cutting and putting such timber in the river had
withdrawn their men and teams because the tim-
ber accessible had been exhausted.

It is granted that while there was timber to be
had at Cane River it had a market value there of
from three to four dollars, but when the proof, as
above summarized, is taken in connection with the
proof of the very large quantity involved in the
contract under consideration (between six and seven
hundred thousand feet, of which over one hundred
and fifty thousand feet had been destroyed by com-
plainant), and the utter impossibility of the de-
fendant being able to repurchase at that place any
appreciable quantity of such timber, the rule of
compensation cannot be satisfied by merely award-
ing damages at what had theretofore been the
market value there, nor at what then may have
still been the theoretic value. In the absence of
an actual market for quantity and quality, the true
value there may be ascertained by proof of the
value in Knoxville, the nearest point where such
quantity and quality could be bought and sold, and
the point to which timber from the place of de-
livery named in the contract was usually sent for
a market, with a deduction for cost of transpor-
tation. The measure of damages, therefore, fixed

by the Chancellor is correct, notwithstanding we reach the same result by a different route.

We do not feel warranted in disturbing the decree on the taxation of costs. While we may not see clearly what led to the judgment in this regard, the matter of costs is so largely within the discretion of the Chancellor that his action will not be vacated unless error be very manifest.

The decree will therefore be in all things affirmed, and as both parties have appealed without obtaining relief here, the costs of this Court will be divided equally between complainant and defendant.

TURNEY, C. J., dissenting said:

I am of opinion that the quantity and quality of timber, and its market value as shown by the proof as recited by the majority opinion, is sufficient to make such a market price at Cane River as to render incompetent any proof of value in Knoxville as a means of ascertaining the value at place of delivery.