NATIONAL COAL TAR COMPANY *vs.* MALDEN AND MELROSE GAS LIGHT COMPANY.

Middlesex.   March 29, 1905. — October 17, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Contract,* Performance and breach.   *Damages.*

In a suit by a coal tar company against a gas company, to restrain the defendant from selling coal tar in violation of its contract with the plaintiff, and for damages, it appeared, that by the contract the plaintiff was to have one half of the defendant's product of coal tar, to be delivered into tank cars belonging to and sent by the plaintiff, and that the plaintiff was to remove the tar at such times and in such quantities as would leave in the tanks of the defendant on the first day of each month not exceeding sixty days' make, subject to the exception that the tar which the defendant was at liberty to sell to other parties was not to be included in such make, that the defendant broke the contract by selling all of its coal tar on hand to other parties, that during a period of nine months the plaintiff did not take away any tar or send or offer to send any cars to remove the tar, if any, to which it was entitled, but that several times during the period it inquired by telephone of the defendant's office whether the defendant had tar and could load a tank car, and on each occasion the reply was made that the defendant had none and could not load a car, and that the treasurer was away and the persons there could not tell, that the tar which the defendant was at liberty to sell to other parties and that to which the plaintiff was entitled was mingled together in the defendant's tanks, and that at the end of the period of nine months mentioned the plaintiff sent a tank car which was filled by the defendant and thereafter other cars were sent and were filled by the defendant

without any objection. The judge found for the plaintiff and assessed damages, and the defendant appealed. *Held,* that the decision was right; that the condition of the tanks was within the exclusive knowledge and control of the defendant, and therefore that the plaintiff was not in default in failing to remove the tar or to send or offer to send cars for its removal in the absence of notice from the defendant that there was tar on hand for delivery; *and, semble,* that, even if the plaintiff had been required to send or offer to send cars, its inquiries and the replies to them might justify a finding that it had done all that was necessary, and that there was ground for contending that the defendant by afterwards delivering tar without objection had waived its right to object to any previous breach of the contract by the plaintiff.

In assessing damages for a breach of contract in failing to deliver a certain product of the defendant in accordance with its terms, if the contract provides that the product shall be delivered at the defendant's place of business, the plaintiff is entitled to the difference between the market value of the product at the plaintiff's place of business and the cost of that product to the plaintiff under the contract, which must be arrived at by adding to the contract price delivered at the defendant's place of business the cost of transportation to the plaintiff's place of business.

MORTON, J. This is a suit in equity to restrain the defendant from selling coal tar in violation of its contract with the plaintiff and for the assessment of damages. The contract was dated January 14, 1902, and was for two years from January 1, 1902, with a privilege of renewal for two years more and has been so renewed. The plaintiff was to have one half of the defendant's product of coal tar with restrictions upon the defendant as to the sale of the other half. The tar was to be delivered by the defendant into tank cars belonging to and sent by the plaintiff, and the plaintiff was to remove it at such times, and in such quantities, as would leave in the tanks of the defendant on the first day of the month not exceeding sixty days' make, subject to the exception that the tar which the defendant was at liberty to sell to other parties was not to be included in such make. The master found that the defendant did not perform its contract for the year 1902, and assessed the damages in the sum of $1,173. This was upon a basis of $3 a barrel for the tar, which the master found was the market price in Boston and vicinity and in the vicinity of Malden. The master also made certain other findings which show, as the defendant contends, that the plaintiff is not entitled to recover. There were exceptions by the plaintiff to the master's report which were overruled, and a decree was entered for the plaintiff for the amount of the damages as found by the master less the freight. Both parties appealed.

We take up the defendant's contention first. The circumstances as found by the master relating to this branch of the case are in brief as follows. According to the contract, as already observed, the plaintiff was required to take away the tar contracted for by it at such times and in such quantities as would leave in the defendant's tanks on the first day of any month not exceeding sixty days' make, not including in such make what the defendant was at liberty to sell to other parties. No tar was taken away by the plaintiff between the first day of March and November 29, 1902, and the plaintiff did not send or offer to send during that time to the defendant any cars to remove the tar, if any, to which it was entitled. The defendant contends that it was not in default until the plaintiff had performed or offered to perform its part of the contract, and that this action cannot be maintained by the plaintiff because of its failure to send or to offer to send cars to remove the tar, and that it had a right to sell the tar, as it did, to other parties. The tar which the defendant was at liberty to sell to other parties and that to which the plaintiff was entitled was all mingled together in the defendant's tanks. The master found that on the first days of April, May, June, July and November there was on hand in the defendant's tanks more than one half of sixty days' make.

The plaintiff contends that this finding is not correct according to the figures and tables appended to the report and according to a just construction of the contract. We do not stop to inquire whether it is or not. We assume in the defendant's favor that it is. The master also finds that during this time the defendant did not notify the plaintiff that it had on hand sixty days' make or require the plaintiff to send to it any cars for the delivery of tar. He finds still further that the defendant's office was called up by telephone by the plaintiff several times during the summer and inquiry was made if they had tar and could load a tank car, and reply was made on the several occasions, according to the nature of the inquiry, that they had none, that they could not load a car, and that the treasurer was away and they could not tell. About November 29, 1902, the plaintiff sent a tank car which was filled and delivered, and thereafter cars were sent and filled and delivered without any objection, so far as appears, on the part of the defendant.

We think it plain that the finding by the judge, which there must have been, that there was no such default on the plaintiff's part as would prevent it from recovering, was right. The condition of the tanks was within the exclusive knowledge and control of the defendant. The plaintiff had no right to enter the defendant's premises to examine them. From the nature of the case it could not know until informed by the defendant that there was tar for delivery, and therefore it was not in default in failing to remove the tar, or in sending or offering to send cars for its removal in the absence of such notice. *Barnes* v. *Parker*, 8 Met. 134. *Hayden* v. *Bradley*, 6 Gray, 425. *Makin* v. *Watkinson*, L. R. 6 Ex. 25. Benjamin, Sales, (6th ed.) § 577.

Even if the plaintiff was required to send cars or to offer to send cars as a condition of recovery, we are not prepared to say that the inquiries made by it and the replies received would not justify a finding that it had done all that was necessary. There is nothing to show that the plaintiff waived performance. On the other hand it well might be argued, if necessary, that the defendant, by delivering tar in November and thereafter without objection, had waived its right to object to any previous breach by the plaintiff.

The plaintiff contends that the freight should not be deducted. The rule is that the market price at the time and place of delivery furnishes the basis of the measure of damages for the non-delivery of merchandise which the defendant has contracted to sell and deliver, and that, if there is no market for the article at the place of delivery, the value at the nearest market governs with the increased expense, if any, of transportation thereby caused to the buyer. *Shaw* v. *Nudd*, 8 Pick. 9. *Bartlett* v. *Blanchard*, 13 Gray, 429. *Saunders* v. *Clark*, 106 Mass. 331. *Grand Tower Co.* v. *Phillips*, 23 Wall. 471. *O'Hanlan* v. *Great Western Railway*, 6 B. & S. 484. *Furlong* v. *Polleys*, 30 Maine, 491. *Rice* v. *Manley*, 66 N. Y. 82. Sedgwick, Damages, (8th ed.) § 246. Benjamin, Sales, (6th ed.) 899, note.

The master has found the market price in Boston and vicinity and in the vicinity of Malden but not in Malden. He also has found that the only tar for sale in Malden during the time of the alleged non-performance was the defendant's tar, and that the rate of freight between Boston and Malden, and other

points nearest to Malden where tar could be obtained was fifteen cents a barrel. The defendant having neglected or refused to deliver tar as required by its contract, and there being no other tar than its tar for sale in Malden, it follows that the plaintiff would have been entitled to supply itself at the place nearest to Malden where it could do so at the market price then prevailing, which as the master has found was at the rate of $3 per barrel. The plaintiff's place of business was in Boston. It does not appear that the plaintiff would have been subjected to any increased expense for transportation by reason of the default of the defendant. On the contrary, in order to get the tar to the nearest market so as to realize its market value there, it would have been obliged to pay freight at the rate of fifteen cents a barrel in addition to the cost of the tar at Malden. All that the defendant was bound to do was to deliver the tar at Malden. To arrive, therefore, at a just estimate of the plaintiff's damages the freight should be added to the contract price and the difference between the cost as thus ascertained and the market value would constitute the measure of the plaintiff's damages. *Johnson* v. *Allen,* 78 Ala. 387. *McDonald* v. *Unaka Timber Co.* 88 Tenn. 38. *Hendrie* v. *Neelon,* 12 Ont. App. 41. *Cockburn* v. *Ashland Lumber Co.* 54 Wis. 619. *Harris* v. *Panama Railroad,* 58 N.Y. 660. This was the principle adopted by the judge and was correct.

*Decree affirmed.*

*J. G. Palfrey,* (*E. C. Bradlee* with him,) for the plaintiff.

*W. P. Martin,* for the defendant.