*Exceptions overruled.*

---

HARRY ROSENTHAL *vs.* CELIA GREEN, administratrix.

Suffolk.    October 17, 1923. — December 22, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, & PIERCE, JJ.

*Contract,* What constitutes, Construction, Performance and breach. *Sale.*
    *Damages,* For breach of contract.

In consideration of the delivery by a wholesale and retail coal dealer to a customer of a written release from a debt owed him by the customer, the customer signed the following document addressed to the dealer: " I am in need bought [the word " bought " being written above the word " need," which had a line drawn through it] of about fourteen hundred (1400) tons of coal, same to be delivered in or about the city of Boston, and some of this coal to be sent to Winthrop. I will buy this coal from you, at the regular market price or $12.50 per ton, net, for all coal I shall order from time to time delivered either in truck or team loads, from your yard. For all coal that I shall order from time to time, by the car loads I will pay you $11 per gross ton F.O.B. Boston. All coal, other than coal bought by the car that I shall order from you, from time to time I will pay the regular

market price, that it may be at that time." The customer gave no delivery order for the coal. In an action based on an alleged breach of the foregoing agreement, it was *held*, that

(1) A finding was warranted that a valid bilateral contract was made and was broken by the customer;

(2) No case of " special damages " described in G. L. c. 106, § 59, was made out, nor did any " special circumstances " mentioned in § 53, cl. 2, of that chapter appear, and it was improper for the judge to instruct the jury, in substance, that, if the release of the defendant's debt was given by the plaintiff as consideration for the defendant's agreement to buy fourteen hundred tons of coal, then, if the defendant broke the contract, the plaintiff would be entitled to recover the profit which the parties understood he was to make on that contract.

CONTRACT, for a breach by the defendant's intestate of a contract to purchase coal of the plaintiff. Writ dated January 31, 1921.

In the Superior Court, the action was tried before *Morton*, J. Material evidence, requests by the defendant for instructions, and exceptions saved by the defendant to the charge by the trial judge are described in the opinion. There was a verdict for the plaintiff in the sum of $1,431.07, of which the plaintiff, in accordance with an order made by the trial judge on a motion by the defendant for a new trial, remitted all but $781.41. The defendant alleged exceptions.

*S. Brenner*, for the defendant.

No argument nor brief for the plaintiff.

DECOURCY, J. The case went to the jury on the second count, which was based on a breach of the following agreement:

" Boston, Oct. 8, 1919.

Mr. H. Rosenthal.

Dear Sir: —

bought

I am in [need*] of about fourteen hundred (1400) tons of coal, same to be delivered in or about the city of Boston, and some of this coal to be sent to Winthrop.

I will buy this coal from you, at the regular market price or $12.50 per ton, net, for all coal I shall order from time to

---

* In the original exhibit, the word " need " had a line drawn through it and the word " bought " was written above it.

time delivered either in truck or team loads, from your yard. For all coal that I shall order from time to time, by the car loads I will pay you $11.00 per gross ton F. O. B. Boston. All coal, other than coal bought by the car that I shall order from you, from time to time I will pay the regular market price, that it may be at that time.

The above is be good ' Egg size ' coal.

(Signed) Henry Green

,,     Israel Ramler."

The record is meager; but the jury could find the following facts: The plaintiff was a wholesale and retail coal dealer. The defendant's intestate, Henry Green, was in the real estate business, and owned or managed divers pieces of property in Boston and Winthrop. He had been buying coal from the plaintiff in carload lots, and owed a balance of $675. Early in October, 1919, Green told the plaintiff that he needed fourteen hundred tons of coal for the season; and after some discussion the above agreement was produced, signed by Green and by a friend as witness. In consideration thereof, the plaintiff gave Green a written release of the $675 debt, and also an agreement to perform the contract on his part. This last paper, referred to apparently as exhibit 2, is not printed in the record. Green never ordered any of said fourteen hundred tons of coal.

The agreement itself is informal and vague. The case is confused by the transcript of the judge's charge, wherein the word " defendant " is printed in three or more instances where it is obvious from the context that " plaintiff " was intended. And the plaintiff has not appeared by counsel, or filed a brief, to aid the court in interpreting an unsatisfactory record. However, as we construe the agreement in controversy, in the light of the attendant facts, the defendant's intestate thereby, for a valuable consideration, made a binding contract for the purchase of fourteen hundred tons of egg coal. The price to be paid was $11 per gross ton for such as Green desired to have delivered in carload lots, and the regular market price for team loads. The jury were warranted in finding that there was a valid bilateral contract, and a breach of it by the defendant's intestate.

The measure of damages for the wrongful neglect or refusal by the buyer to accept and pay for goods, is thus defined by the sales act, G. L. c. 106, § 53: " (2) The measure of damages shall be the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract. (3) If there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damage of a greater amount, shall be the difference between the contract price and the market or current price at the time when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept." The judge in the course of his charge stated this rule fully, and in accordance with the defendant's tenth request. But he also instructed the jury, in substance, that if the release was given by the plaintiff as consideration for the defendant's agreement to buy fourteen hundred tons of coal, then if the defendant broke the contract the plaintiff would be entitled to recover the profit which the parties understood he was to make on that contract. This was based upon the assumed application to the facts of § 53 (2) above quoted. The defendant specifically excepted to this portion of the charge.

. In our opinion the exception must be sustained. As stated by Chalmers, in dealing with the similar provision in the English act, " The market price rule in sub-sect. (3) is an obvious deduction from sub-sect. (2), applicable to the ordinary goods of commerce for which there is a more or less ready sale. The rule is so convenient, that the courts apply it whenever and so far as practicable." Chalmers, Sale of Goods Act, 1893 (8th ed.) 114. And see Williston on Sales, 967. The provisions of G. L. c. 106, § 56 (3), are applicable to the agreement in question for the sale of coal, on the facts disclosed by this record. The plaintiff did not show that he could not and did not sell the coal left upon his hands at a market price at least equal to that which the defendant had agreed to pay therefor. No case of " special damages " was made out for which provision is made in § 59. In effect the release was merely a consideration moving from the plaintiff which bound the defendant to take the

coal specified in the agreement. It may be added that the record discloses no " special circumstances" within the meaning of that term in said subsection (3), which would prevent the application of the general rule of damages. See *Torkomian* v. *Russell*, 90 Conn. 481.

It is unnecessary to consider in detail the defendant's twenty-one requests for instructions. There is no evidence in the record to call for many of them, — such as 4, 5, 9, 11 and 12; others, like 15, 16, 17 and 18 select special facts for argumentative emphasis. *Altavilla* v. *Old Colony Street Railway*, 222 Mass. 322. The remaining ones, and the motion for a directed verdict, are sufficiently covered by what has been said above. Manifestly the exception to the charge as a whole, and that to the denial of a motion to set aside the verdict cannot prevail. Nor do we find any reversible error in the admission of evidence. But by reason of said error in the instructions as to damages, the entry must be

*Exceptions sustained.*