# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

HERBERT F. SCOFIELD *vs.* J. H. BAROWSKY & others.

Suffolk.   November 19, 1923. — May 17, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Sale,* Of goods in warehouse.   *Damages,* For breach of contract of sale.
  *Practice, Civil,* Verdict, Exceptions.

The declaration in an action of contract contained three counts, the first
two counts being upon an account annexed for the purchase price of
goods alleged to have been sold by the plaintiff to the defendants, and
the third count being for an alleged breach by the defendants of an
agreement to accept and pay for the goods.   At the trial of the action,
there was evidence tending to show that the goods were in a warehouse
and that the superintendent of the warehouse, acting as agent for the
defendants, made an agreement for the sale of the goods by the plain-
tiff to the defendants " ex warehouse . . . our [the defendants'] de-
livery; " that the words " ex warehouse . . . our delivery " meant
" that the goods were sold ' just where they are placed in the ware-
house; that the seller does not have to remove them at all, and that the
buyer has to take them either by truck, by rail, or by his own expense.' "
In response to a question by the jury, returning for the purpose, " If
we allow the contract price plus interest, storage . . . would the goods
revert back to " the defendants, the judge instructed the jury that if
they found for the plaintiff for the contract price, the goods would be-
long to the defendants.   The defendants excepted to such instruction,
and in support of their exception argued that it was not pertinent to
the issues raised by the pleadings and the evidence and that it was
based on an assumption of fact as to which there was no evidence in
the case, namely, that at the time of the trial the goods were in existence
and available.   *Held,* that

(1) There was evidence upon which the jury were to determine whether the parties intended that the general and absolute title to the goods should pass to the defendants;

(2) The instruction excepted to by the defendants was correct and no sufficient reason appeared in the defendants' argument why the question of the jury asking for instructions on this point should not have been answered.

The contract of sale above referred to was based upon an order by the defendants to the plaintiff and a letter by the plaintiff to the defendants' agent in which the plaintiff enclosed the warehouse receipt indorsed in blank and stated, "you are to guarantee that payment is made to us within one week during which time delivery is to be taken . . . . Inasmuch as the storage expires on the 10th of the month another storage period will not be incurred if the stock is removed within one week's time." The defendants introduced evidence tending to show that a railroad embargo prevented them from removing the goods, and contended that they were not required by the contract to remove them in any specified time. *Held,* that the contract was not subject to the conditions relied upon by the defendants as an excuse for non-performance.

At the trial of the action above described, there was evidence that the order of the defendants to the plaintiff was dated January 13; that the letter of the plaintiff to the defendants containing a stipulation that the defendants take delivery within one week was dated on the same day; that the defendants refused to perform the agreement up to February 27, when the plaintiff withdrew the warehouse receipt and attempted unsuccessfully to sell the goods; that thereafter the plaintiff returned the warehouse receipt properly indorsed to the defendants' agent; and that at the date of the withdrawal of the warehouse receipt by the plaintiff the market price of the goods "was purely nominal." The evidence was controverted. The defendant requested the judge to rule, in substance, that, if the plaintiff was entitled to damages based on the difference between the contract price and the market price, he was entitled to not more than nominal damages, and that the "most that the plaintiff can recover in this case is nominal damages." The requests were refused. *Held,* that the refusal was proper, since on conflicting evidence the jury were warranted in finding that on February 27 the goods "were worth nothing," and in awarding substantial damages.

At the trial of the action above described, the judge, subject to exceptions, admitted as applicable only to the first and second counts of the declaration testimony tending to show that the plaintiff had paid storage charges on the goods in the warehouse for ten months succeeding February 10. The judge thereafter instructed the jury that, if they came to the "question of damages, independent of the contract price, the plaintiff would be entitled to reasonable expense that he was put to, if any, in storing the goods." The attention of the judge was not called to any question of pleading. The judge did not instruct the jury to disregard the evidence as to the first and second counts. There was a general verdict for the plaintiff which included storage charges. *Held,* that

(1) The instruction was limited to the third count;

(2) The judge's attention not having been called to any defect in the pleadings on the question of damages, the question, whether the charge for storage was in the nature of special damages and was not recoverable because not alleged in the declaration, was not open;

(3) The evidence as to the storage charges was inadmissible under the first and second counts;

(4) It was unnecessary to decide whether the breach of agreement set out in the third count in the circumstances enabled the plaintiff to recover storage charges under G. L. c. 106, § 53, (1), (2), (3), (4), and § 59, the verdict being general and the error in the admission of the evidence affecting only the measure of recovery;

(5). Under G. L. c. 231, § 125, it was ordered that the plaintiff remit from the amount of his verdict the amount of the storage charge, and that, if he refused so to do, the defendants' exceptions should be sustained.

CONTRACT.    Writ dated April 26, 1920.

The first count of the declaration was upon an account annexed for $732.16 for thirty-two bales uncompressed linters, " 18,304 pounds," " goods sold and delivered." The second count, added by amendment, was for $682.16 upon an account annexed for thirty-two bales uncompressed linters, " 18,304 pounds " at four cents per pound with a cash credit of $50.    The third count was for breach of an express agreement by the defendants to accept and pay for the linters.    The counts were alleged in the declaration to be for the same cause of action.

In the Superior Court, the action was tried before *Morton,* J.    Evidence relating to market prices of the goods referred to in the declaration was as follows: The plaintiff testified " that on February 27, the time that the warehouse receipt was returned to him by the warehouse company, the market price of uncompressed linters was purely nominal, that at that time there was no market demand for them, that the valuation to be placed on linters at that time was any man's opinion, that any such opinion would necessarily be arbitrary because of the fact that there was no market for them, that in his opinion the goods were worth nothing at all at that time, February 27, 1920, because there was no market for them at that time.    The defendant Joseph H. Barowsky testified that market conditions did not change in the interim between the date of the purchase, January 13, and the month

of June, 1920, that there was a steady demand for linters until June, 1920, that the price per pound which he agreed to pay to the plaintiff on January 13 continued to be the market price until the month of June, that in the month of June there was a slight decline in the market price, and that there was no radical decline in the market price until September, 1920."

Other material evidence is described in the opinion. The defendants asked for the following rulings:

" 1. On all the evidence the verdict should be for the defendants."

" 24. If the plaintiff is entitled to recover damages based on the difference between the contract price and the market value, he is entitled in this case on the evidence to not more than nominal damages."

" 28. The most that the plaintiff can recover in this case is nominal damages."

The rulings were refused. In the course of the charge to the jury, the presiding judge stated as follows: " Now, what is the rule of damages in the case where the seller is so situated with reference to the delivery or possession of title that he cannot recover the contract price as such? Well, the statute of sales provides that the measure of damages is the estimated loss directly and naturally resulting in the ordinary course of business from the buyer's breach of contract. Then it provides where there is an available market for the goods the damages are to be determined by the difference between the contract price and the market value. In this case there has been some question raised as to whether there was any available market for the goods at or about the time the contract was alleged to be broken. Now, if there was — there is a dispute in the evidence about that — if there was an available market, then the plaintiff would be entitled to recover, if he is not entitled, under the rule as I have laid it down, to recover the contract price, he would be entitled to recover the difference between the contract price and the market value. In other words, what the law attempts to do is to put the seller in as good a condition as it reasonably can by reason of the breach of the contract, and

it forces the buyer to put the seller into as good a condition as he reasonably can in case of an available market. The law says the difference between the contract price and the market price fairly represents what the seller has suffered by reason of the breach of contract. Now, if there is no available market, then I assume, under the sales act, that the first section must apply. In other words, you have to determine, estimate the loss which directly and naturally results in the ordinary course of business from the situation. Now, the goods, while they may not have had an available market, were not worthless, they were not goods which they would put upon the dump heap as being absolutely worthless. How you get at that I frankly don't know how I could tell you as a matter of law. You have got to determine, if you come to that basis for the determination of the contract, you have got to determine from your knowledge of the situation as drawn out in the evidence what fairly represents what you consider a fair estimate of the loss which the plaintiff has been put to from the defendants' not buying the goods."

To the foregoing portions of the charge, the defendants alleged an exception.

After the jury were excused, the trial judge recalled them to state as follows: " I forgot to speak in my charge on the question of damages. If you come to that question of damages, independent of the contract price, the plaintiff would be entitled to reasonable expense that he was put to, if any, in storing the goods. There was some evidence, you remember, in regard to storage." To the foregoing instruction, the defendants saved an exception.

After the jury again had retired, they returned at their own request, for further instructions in answer to the question, " If we allow the contract price plus interest, storage and deducting $50, the forfeit, would the goods revert back to Barowsky? " The trial judge replied as follows:

" In the first place, if you allow the contract price as such you cannot allow storage, nor can you deduct the $50. If you allow the contract price, with that exception, the question as to whether the goods revert back to Barowsky or not is not one in which you are concerned in any way. You

have got to follow my instructions. I said nothing about it in my instructions and you can't, although you may have it in mind, adopt it as any legal basis for recovery or not recovery and it has nothing to do with the case. That is taken care of subsequently. . . . You can't add storage, you can't deduct the forfeit, and the question as to the future history of the goods is not one in which you are concerned."

The jury again retired, and the trial judge again recalled them and addressed them as follows: "In thinking over your question again, I think and feel that perhaps you are entitled to know the legal results of a verdict of that sort. I am going to tell you what they are with reference to the question asked. If the jury finds for the plaintiff for the contract price, then that means that the plaintiff has been paid what he was entitled to under the contract and the goods belong to the defendant. In other words, the plaintiff in such a case holds the goods as the bailee or agent for the defendant and when he is paid his price they belong to the defendant."

The defendants saved an exception to the instruction contained in the last paragraph preceding.

There was a verdict for the plaintiff in the sum of $765. On motion by the defendants and order by the trial judge, the plaintiff remitted from the verdict the sum of $55.

The defendant alleged exceptions, and in this court argued (1) that it was error for the trial judge to instruct the jury that they could consider the effect of a verdict for the plaintiff for the contract price on the future history of the goods because such instruction was upon an issue not made pertinent by the pleadings and the evidence and because it proceeded upon an assumption that at the time of the trial the goods were available for the defendants, whereas there was no evidence in the case relative to the existence or whereabouts of the goods at the time of the trial; (2) that the trial judge committed error in the matter in his instructions relating to damages and relating to reimbursement for storage charges.

*N. A. Heller*, for the defendants.

*J. Wasserman*, for the plaintiff.

BRALEY, J.   It was undisputed that on January 13, 1920, the goods or linters in question, title to which was in the plaintiff, were stored in a public warehouse at Chicopee for which the plaintiff held a negotiable warehouse receipt. The jury would have been warranted in finding, that the superintendent of the warehouse, one Tuller, who desired their prompt removal as arrangements were pending for the discontinuance of the warehouse, communicated with the defendants, whose usual place of business was in Holyoke, concerning the purchase of the linters, and after several preliminary talks the defendants said, " they would be willing to buy . . . at four cents per pound and authorized him to make arrangements with the plaintiff in their behalf." If the jury so found, it would follow that in all the negotiations which followed Tuller acted as the agent of the defendants.   The evidence also tended to show Tuller telephoned the plaintiff that he had a customer for the linters at four cents a pound, and the plaintiff agreed to sell at this price, and requested Tuller to have the defendants send a written order with a check for $50 to bind the bargain. The defendants thereupon mailed to the plaintiff on January 13, 1920, a written order for thirty-two bales uncompressed linters at four cents a pound " ex warehouse Springfield our delivery " and a check for $50 on account.   The jury could find on the plaintiff's evidence there was a custom or usage in " the cotton waste trade," that the words in the defendants' order, " ex warehouse Springfield our delivery," meant, " that the goods were sold ' just where they are placed in the warehouse; that the seller does not have to remove them at all, and that the buyer has to take them either by truck, by rail, or by his own expense.' "   *Barrie v. Quinby*, 206 Mass. 259, 264, 265.   On the same day the plaintiff sent Tuller the warehouse receipt indorsed in blank, and the " invoice " with a letter which, after confirming the " telephone conversation " and stating the term of sale as " net cash," continued " with the stipulation that you are to guarantee that payment is made to us within one week during which time delivery is to be taken of the linters. Inasmuch as the storage expires on the 10th of the month

another storage period will not be incurred if the stock is removed within one week's time. . . . As usual the stock is to be weighed going out and the invoice we are attaching hereto with the average weight is to be corrected to correspond to the actual reweights of the 32 bales."

The plaintiff accordingly had received and accepted from the defendants a written order for the linters. The invoice was in the name of the defendants, and, the warehouse receipt indorsed in blank having been delivered to their agent, there was evidence under which the jury were to determine, whether the parties intended that the general and absolute title to the linters should pass to the defendants. G. L. c. 106, § 20 (1), § 21 (1), § 29. G. L. c. 105, § 46. *Morse* v. *Sherman*, 106 Mass. 430. *Townsend* v. *Hargraves*, 118 Mass. 325. *Automatic Time Table Advertising Co.* v. *Automatic Time Table Co.* 208 Mass. 252. *Stone Leather Co.* v. *Henry Boston & Sons, Ltd.* 234 Mass. 477.

The instructions, that, if the jury found for the plaintiff for the contract price, the linters would belong to the defendants, were legally correct, and no sufficient reason appears in the argument of the defendants why the question of the jury asking for instructions on this point should not have been so answered. *Morse* v. *Sherman, supra.*

The defendants, however, never removed the goods, nor paid the remainder of the purchase price. By telephone and by letters beginning on January 24, addressed to Tuller, the plaintiff demanded payment, and notified him that if payment was not made, the " binder " of $50 would be treated as forfeited. The plaintiff, having another lot of linters in storage, sent to him as superintendent of the warehouse a check for storage charges on " both lots of linters . . . up to the February period," on the tenth of which a new storage period for the bales sold the defendants would begin. And on February 14 by telegram and letter he demanded a return of the warehouse receipt which covered the goods sold. It was returned by Tuller with a letter which stated, that the receipt covered thirty-two bales of linters " which were sold the Barowsky Co.," the defendants. The record recites, " Enclosed in this letter was a negotiable warehouse

receipt to the order of the plaintiff covering the thirty-two bales of linters. This receipt was issued to replace the receipt previously referred to, which upon the issuing of the new receipt was cancelled." The plaintiff as soon as the warehouse receipt was returned " attempted to sell the linters, but was unsuccessful because of the unfavorable market conditions then existing." The plaintiff retained counsel, and, in a letter to them of March 4, 1920, the defendants took the position, " that at the time we purchased this merchandise . . . we did not state when we would remove this stock, and the understanding was that we will pay for the stock when we remove it. So far, on account of freight conditions, we have not been able to touch it. However, we will do so as soon as we can. In the meantime, if the Scofield Co. [meaning the plaintiff] are not satisfied with this arrangement, we are perfectly willing to take back our deposit we gave them and call the deal off." The defendants' counsel also wrote to plaintiff's counsel, " that when the goods were bought by the Barowsky company there was no definite date set as to when they were to take the goods. At present there is an embargo on, as you know, and as a consequence have not been able to get this merchandise out as they want to. Let me assure you that my clients want the goods and also that as soon as railroad facilities are so that goods can be shipped, they will attend to this matter and have this affair taken care of." The plaintiff's counsel on the day of bringing the present action sent to the warehouse company the storage receipt covering the goods in question. The warehouse company, acting by Tuller as superintendent, returned the receipt, " and wish to advise that these linters are still in storage and we are holding for orders from Mr. Scofield, before we can make deliveries. It is necessary that this receipt be endorsed by Mr. Scofield." The plaintiff indorsed and returned the receipt " to the warehouse company instructing it to hold the thirty-two bales for the defendants," and the company notified the plaintiff that it would comply with this request.

The amended answer pleaded rescission by agreement of parties. But this defence was waived at the trial, and the

defendant Joseph H. Barowsky " who acted for all the defendants in the transaction, testified that up to the time that the plaintiff in the latter part of February demanded and received the return of the warehouse receipt . . . he was willing to pay for the linters provided he could secure railroad transportation, that because of railroad embargoes on freight he was unable to remove the linters . . . that he was not willing to pay . . . in advance of removal, and that so far as the plaintiffs [*sic*] were concerned the goods were ready for delivery."

The contract was not subject to any of the conditions relied on by the defendants as an excuse for nonperformance. If the jury, under the first and second counts to recover the price, found that title had not passed, there was evidence for their consideration, that beginning within one week from January 13 " during which time delivery is to be taken of the linters " as stated in the letter of the plaintiff to Tuller bearing even date with the invoice, and continuing to February 27 when the plaintiff withdrew the warehouse receipt, the defendants on their own admission declined to perform, when all that remained to be done was to accept delivery, remove the linters, and pay the balance of the purchase price.  The judge under such circumstances rightly refused to rule, that, if the plaintiff is entitled to damages based on the difference between the contract price and the market price, he is entitled to not more than nominal damages, and " the most that the plaintiff can recover in this case is nominal damages."  While the evidence on the measure of damages was conflicting, the jury if they believed the plaintiff's testimony could say there was no market for the linters on February 27, and that " they were worth nothing."

The instructions to which the defendants excepted were sufficiently full, and show no reversible error.  G. L. c. 106, § 53, cl. 2.  *Bartlett* v. *Blanchard*, 13 Gray, 429, 430.  *Houghton* v. *Furbush*, 185 Mass. 251.  *Barrie* v. *Quinby*, 206 Mass. 259, 268.  *Edelstone* v. *Schimmel*, 233 Mass. 45, 50.

The judge subject to the defendants' exception also instructed the jury, that they could include in the assessment storage charges by the warehouse for ten months from

February 10 amounting to $88. This instruction was limited to the third count, even if the evidence when admitted was confined to the first and second counts. It is contended first, that the charge for storage was in the nature of special damages which are not recoverable because not alleged in the declaration. *Warner* v. *Bacon,* 8 Gray, 397, 400. But, the attention of the judge not having been called to any question of pleading, or to the sufficiency of the declaration in this particular, the question is not open on the record for reasons stated in *Oulighan* v. *Butler,* 189 Mass. 287, 289. *Garfield* v. *Peerless Motor Car Co.* 189 Mass. 395, 404. It is next contended that, apart from any question of pleading, the defendants were not liable for storage, the period of which seems to have been unquestioned. The charges were not recoverable under the terms of the contract, *Bartlett* v. *Blanchard,* 13 Gray, 429, 430. *Lonergan* v. *Waldo,* 179 Mass. 135, 139. *National Coal Tar Co.* v. *Malden & Melrose Gas Light Co.* 189 Mass. 234, 237. *Learned* v. *Hamburger,* 245 Mass. 461. See *Peak* v. *Frost,* 162 Mass. 298, and the evidence was inadmissible under the first and second counts for goods sold and delivered. The defendants, if there was a sale, and not the plaintiff, were liable thereafter for storage, and the record fails to show that at any time the jury were instructed to disregard this evidence as to those counts. *Learned* v. *Hamburger, supra.* It is urged by the plaintiff that he can hold the verdict under the third count. *West* v. *Platt,* 127 Mass. 367, 373. *Bergeron* v. *Forest,* 233 Mass. 392, 397, 398. But it is unnecessary to decide whether the breach of the agreement as declared on in the third count, to accept and receive the linter, might in the circumstances shown by the record enable the plaintiff to recover storage charges as damages under G. L. c. 106, § 53 (1), (2), (3), and (4), and § 59. *Hanson & Parker, Ltd.* v. *Wittenberg,* 205 Mass. 319; *Rosenthal* v. *Green,* 247 Mass. 153. The verdict is a general verdict, and, when applied to all the counts, it is plain, that the question affects only the measure of recovery.

The exceptions to the refusal to direct a verdict for the defendants, and to rule, that on all the evidence the verdict should be for the defendants, as well as the exceptions to

the denial of the defendants' motion for a new trial, not having been argued must be treated as waived.

If the plaintiff within ten days after date of the rescript files in the Superior Court a remittitur of $88, the entry will be, exceptions overruled; but, if not so filed, the entry will be, exceptions sustained.  G. L. c. 231, § 125.  *Donovan* v. *Walsh*, 238 Mass. 356, 362.

*So ordered.*