KEOWN AND MCEVOY, INCORPORATED, *vs.* L. VERLIN.

Worcester:   April 15, 1925. — October 7, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Contract*, Validity, Consideration.   *Practice, Civil*, Verdict, Exceptions.

An action of contract cannot be maintained upon an agreement by the defendant to pay to the plaintiff an amount of loss contended by the plaintiff, and denied by the defendant, to have been suffered by the plaintiff because potatoes sold to him by the defendant were frozen, where, as a consideration for the alleged contract, the plaintiff relies upon a promise on his part to "offer testimony necessary for" the defendant to enforce a claim of the defendant for the alleged loss due to freezing against one who had sold the potatoes to him, such a contract being a corrupt bargain which the law will not enforce.

Where, at the trial of an action with a declaration in three counts, alleged to be for the same cause of action, the defendant asks for a ruling of law as to one of the counts which the judge erroneously refuses to give, and a general verdict for the plaintiff is returned, an exception by the defendant to a refusal to grant the ruling asked for must be sustained.

CONTRACT, with a declaration as amended in five counts, alleged to be for the same cause of action. Writ dated February 7, 1922.

The first and second counts were not submitted to the jury. The third count is described in the opinion. The fourth count was for "interest on damage suffered on carload of potatoes"; and the fifth count was upon an account annexed

for $739.90, "loss on one carload of potatoes as per agreement," and $43.06 interest.

The action was tried before *Brown*, J.   Material evidence is described in the opinion.   At the close of the evidence, the defendant asked for the following rulings:

"1. Upon all the evidence the plaintiff is not entitled to recover.

"2. There is no evidence of a legal consideration for the agreement to pay for frozen potatoes alleged in the plaintiff's declaration.

"3. If the jury finds that the potatoes were frozen after their arrival in Worcester, the loss is upon the plaintiff and it cannot recover anything therefor in this action."

The rulings were refused.   The jury found for the plaintiff in the sum of $878.04.   The defendant alleged exceptions.

The case was submitted on briefs.

*E. H. Crandell,* for the defendant.

*G. R. Stobbs, H. H. Hartwell, & L. E. Stockwell,* for the plaintiff.

BRALEY, J.   The jury would have been warranted on the evidence in finding the following facts.   The plaintiff bought of the defendant prior to November 16, 1920, at an agreed price of $2.45 per hundred weight, a car load of potatoes to be shipped by freight free on board from Amherst, New Hampshire, to Worcester, Massachusetts.   The potatoes, packed in bags, each holding two bushels, were duly placed in a freight car November 16, 1920.   A sight draft attached to the bill of lading was drawn, upon payment of which at the bank the plaintiff would receive the bill of lading and could unload the potatoes, which upon arrival, with the right of inspection, were to be at the plaintiff's risk.   But upon examination black, or dry rot was discovered, and, the defendant having been notified, the parties mutually agreed, that a discount of $211.70 should be allowed on the purchase price, and a check for that amount was given by the defendant, which the plaintiff collected.   The plaintiff December 10, 1920, also paid the draft.   The car however not having been entirely unloaded until December 13, twenty-five days after its arrival, it was then discovered that the potatoes

in the three or four tiers from the door were frozen. The defendant admitted to the plaintiff's agents Keown and Mc-Evoy, "who made up the corporation," "that the potatoes were not right." The loading of the car began at one station where part of the bags were put in. It was then left open all night, and the loading was finished the next day, "and these potatoes which were put in with the car open all night were the frozen potatoes; they were first in the car the last out." There also was evidence of the amount of the plaintiff's loss or damage. The defendant, who denied these alleged admissions, contended and testified, that the potatoes were frozen after they were received by the plaintiff, and that he had purchased from one Crane a crop of potatoes which included the potatoes in question, and had partially paid therefor, but had declined to pay the full amount because of the dry rot found in the shipment to the plaintiff, and that Crane had brought an action to recover the remainder of the price. It could be further found on the evidence for the plaintiff, that the defendant promised the plaintiff that if it would "go ahead and do what we could with them, get out of it the best we could, and render him a bill for our loss . . . he would get it from the man he bought from; and if we would offer testimony necessary for him to get his claim . . . he would see that we were repaid our loss." The action of Crane was "set down" for trial, and Keown at the request of the defendant attended. The evidence of what took place was conflicting. It was for the jury to say whether Keown did give evidence as a witness, or whether the case, as the defendant testified, was settled before it was reached for trial by payment of Crane's claim less the amount the defendant had paid to the plaintiff.

The exceptions state, that "The case was tried throughout upon the theory that the sole questions to be determined were whether or not the potatoes were frozen and if so, when, and whether the contract to pay for the frozen potatoes (if they were frozen), was made. Counsel for both parties argued the case solely upon that theory, and the court charged the jury that those were the real questions in the case."

The defendant's motion for a directed verdict, and his first request, that on all the evidence the plaintiff could not recover, could not have been granted. The plaintiff was not buying frozen potatoes, and there was an implied condition that they were merchantable. *Murchie* v. *Cornell*, 155 Mass. 60, 63. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 451, 453. The question of damages for an alleged breach was for the jury.

The amended declaration consisted of five counts, alleged to be for the same cause of action, but the case went to the jury on the third, fourth and fifth counts. The third count not only alleges a breach of the contract of sale but also declares on the performance of the special agreement of the plaintiff to furnish evidence at the trial of the action of the defendant against Crane. If, as we have said, the jury could find that the special contract was made, and was performed, the defendant contends that, being against public policy and without consideration, it is unenforceable. The plaintiff could not recover under this contract without proof of its terms; and the defence of illegality although not pleaded is before us. *Claflin* v. *United States Credit System Co.* 165 Mass. 501. *O'Brien* v. *Shea*, 208 Mass. 528. The administration of justice undoubtedly is a mutual benefit to all members of the community and every competent citizen is under an obligation to further it as a matter of public duty when summoned by due process of law to give evidence. 28 R. C. L. 662, § 246. The unsummoned witness Keown, who on the record resided in this Commonwealth, could have been summoned and compelled to attend under G. L. c. 233, §§ 4, 5, without additional pay. And the case at bar is not within *Barrus* v. *Phaneuf*, 166 Mass. 123, where it was held that a civil engineer who had been engaged by the defendant to examine the case, to attend court at a future day, and testify as an expert, and did so testify after being duly summoned, could recover extra compensation for his services. It has been held that where a witness has been subpoenaed to attend at court and testify, a promise to pay extra fees for his attendance is unenforceable for want of consideration. The performance of a legal duty is not a

sufficient consideration to support a promise. *Pool* v. *Boston,* 5 Cush. 219, 221. *Codman* v. *Dumaine,* 249 Mass. 451. *Collins* v. *Godefroy,* 1 B. & Ad. 950. *Dodge* v. *Stiles,* 26 Conn. 463. The contract in question was not merely to testify to facts within the personal knowledge of either Keown or McEvoy. It was an agreement that if the witnesses or either of them would so testify as to enable the defendant to maintain his claim for loss caused by frozen potatoes, he would pay the plaintiff the amount, liability for which he strenuously denied at the trial. The special agreement plainly tended to impede the administration of justice by the introduction of purchased testimony. It was a corrupt bargain which the law will not enforce. The second request, "that there is no evidence of a legal consideration for the agreement to pay for the frozen potatoes alleged in the plaintiff's declaration" should have been given.

It is unnecessary to consider the defendant's other exceptions. The verdict is a general verdict, and as the damages assessed are indivisible and the plaintiff could recover only under the original contract, the exceptions must be sustained. *Scofield* v. *Barowsky,* 249 Mass. 1.

*So ordered.*