HENRY IRWIN, Appellant, v. CHARLES CURIE, Respondent.

ATTORNEYS — CONTRACT TO DIVIDE CONTINGENT FEE ENFORCEABLE BY LAYMAN — CODE CIV. PRO. § 74. A customs broker who, with the assent of his customers, has placed their claims against the government in the hands of an attorney for collection under an agreement that the latter will divide with him the amount of any recovery, may maintain an action against the attorney for his share of the amount collected, although section 74 of the Code of Civil Procedure prohibits attorneys from making such agreements, since the statute does not in terms prohibit a layman from making such a contract, its prohibition being directed against the attorney alone, and, therefore, the parties are not *in pari delicto*.

*Irwin* v. *Curie*, 56 App. Div. 514, reversed.

(Argued May 13, 1902; decided June 10, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 17, 1900, which affirmed a judgment in favor of defendant entered upon an order of Special Term sustaining a demurrer to the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. Stewart Ross* for appellant. The contract alleged in the complaint was not *malum in se*. (*Brown* v. *West*, 9 App. Div. 135; *Tracy* v. *Talmadge*, 14 N. Y. 162; *Curtis* v. *Leavit*, 15 N. Y. 9; *Oneida Bank* v. *Ontario Bank*, 21 N. Y. 490; *Degroff* v. *A. L. T. Co.*, 21 N. Y. 124; *S. H. Bank* v. *Codd*, 18 N. Y. 240.) Section 74 of the Code makes no provision whatever as to parties other than an attorney entering into an agreement as specified in that section; such a contract

as specified in the section is not forbidden or declared illegal or void; the sole prohibition is against an attorney entering into such a contract as specified, and section 75 prescribed the penalty against him only for entering into or making such a contract as specified in section 74. No prohibition is made against any one other than an attorney entering into a contract with the attorney, nor is any punishment or penalty prescribed against the party other than the attorney for making such a contract. (*Tracy* v. *Talmadge*, 14 N. Y. 183.)

*W. Wickham Smith* for respondent. The plaintiff is seeking to enforce a contract to commit a crime. (Code Civ. Pro. §§ 74, 75.) Plaintiff and defendant stand in the same position in the eyes of the law. (Penal Code, §§ 29, 682.) Contracts like the one set forth in the complaint, prohibited by statute and against public policy, cannot be enforced. (*Wetmore* v. *Hegeman*, 88 N. Y. 73; *Browning* v. *Marvin*, 100 N. Y. 144; *Lyon* v. *Hussey*, 63 N. Y. S. R. 531; *Oishei* v. *Lazzarone*, 15 N. Y. Supp. 933; *Hirschbach* v. *Ketchum*, 5 App. Div. 324; *Nellis* v. *Clark*, 20 Wend. 24; *Haynes* v. *Rudd*, 83 N. Y. 251; *Woodworth* v. *Bennett*, 42 N. Y. 273; *Knowlton* v. *C., etc., S. Co.*, 57 N. Y. 518; *Leonard* v. *Poole*, 114 N. Y. 371; *Goodrich* v. *Houghton*, 134 N. Y. 115.)

Parker, Ch. J. Thus far in the progress of this action it has been held, mainly on the authority of *Hirshbach* v. *Ketchum* (5 App. Div. 324), that the complaint does not allege a cause of action. It states in substance that plaintiff, a customs broker, undertook to collect the claims of importers against the government for excess of duties paid to said government; that with the knowledge and assent of his customers he made an agreement with defendant, an attorney and counselor at law, authorized to appear in the United States courts, whereby plaintiff was to procure employment for defendant in the prosecution of such claims for excess of duties, upon contingent fees of 50 per cent, to be

equally divided between plaintiff and defendant; that in pursuance of such agreement plaintiff procured the placing with defendant of the claims of Weil & Co., in which matter $37,350.91 was recovered, of which the defendant received $18,620.45, one-half of which was, under the agreement, due to plaintiff, but which defendant refused to pay.

The ground upon which defendant rested his demurrer was that he personally was prohibited by statute from making such an agreement and that as the plaintiff participated with him in making a contract which offends against the statute, the courts will not enforce it.    If this were true defendant would be enabled by an open violation of law to double the profits which his illegal contract promised him. If this view of the law be correct, it would seem to follow that the statute encourages rather than discourages the vice at which it aims.    But the law of this state is quite otherwise and more in accord with sound reason, as we shall point out.

Quite long ago it was settled by this court that the common law relating to champerty and maintenance no longer obtains in this state. (*Sedgwick* v. *Stanton*, 14 N. Y. 289.)    Later, in *Fowler* v. *Callan* (102 N. Y. 395), this court, Judge FINCH writing, said : " It does not affect the validity of the contract between the attorney and his client that, measured by the old rules relating to champerty and maintenance, it would have fallen under their condemnation, for neither doctrine now prevails except so far as preserved by our statutes."

The only statutes in this state relating to the subject of champerty or maintenance now in force are to be found in sections 73 and 74 of the Code of Civil Procedure.    Section 73 prohibits an attorney or counselor from buying a claim with the intent and for the purpose of bringing an action thereon, while section 74 reads as follows :

" An attorney or counselor shall not, by himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or

in the hands of another person, a demand of any kind, for the purpose of bringing an action thereon. But this section does not apply to an agreement between attorneys and counselors, or either, to divide between themselves the compensation to be received."

It will be observed that this statute does not provide that such a contract shall be wholly void, nor does it in terms purport to operate upon a layman who may be persuaded to procure business for an attorney because of the latter's promise to divide the profits with him. Its prohibition is directed against the attorney and counselor, who is an officer of the court, and the very next section (75) provides that " an attorney and counselor who violates either of the last two sections is guilty of a misdemeanor." Here again we note that the penalty inflicted is upon the attorney and counselor alone and not upon his accomplice or possibly intended victim.

But defendant urges that, notwithstanding the language of the statute is applicable to an attorney and counselor alone, nevertheless the contract upon which plaintiff relies was, so far as defendant is concerned, a prohibited contract, and, therefore, the courts will not aid either party to the contract as against the other, but will leave them in whatever predicament they may find themselves at the time one or the other of the parties seeks the assistance of the courts.

This is undoubtedly the rule where the parties to the contract are *in pari delicto* as well as *particeps criminis*, but it was long ago held in this state, in a very careful opinion written by Judge SELDEN in *Tracy* v. *Talmage* (14 N. Y. 162), that the court will, under certain circumstances, relieve a party to a contract which the other party was prohibited by statute from making. The principles established in that case have been frequently indorsed and never challenged in this court, and are applicable to the situation presented by this complaint.

In that case the North American Trust and Banking Co. had, in violation of its charter, issued and delivered its promissory notes. The effect of the contract was held to have been the same as if the issuing of the notes had been specifi-

cally prohibited under a penalty. The bank attempted to avoid payment on the ground that the contract being prohibited by statute was illegal, and therefore, non-enforceable. The court, after a very careful review of the authorities, pointed out that where the contract is *malum in se,* thus involving moral turpitude or violating some principle of public policy, the courts will in no case interfere to relieve either party from any of its consequences. But where the contract is merely *malum prohibitum* the court will interfere if the guilt rests chiefly upon one, although both have participated in the illegal act. " The maxim (said Judge SELDEN) *ex dolo malo non oratur actio* is qualified by another, viz., *in pari delicto melior est conditio defendentis.* Unless, therefore, the parties are *in pari delicto* as well as *particeps criminis,* the courts, although the contract be illegal, will afford relief where equity requires it to the more innocent party."

In that case the court reached the conclusion that while the other party to the contract with the bank was a party to a contract made in violation of statute, nevertheless it was not equally culpable with the bank, and, therefore, was entitled to the assistance of the court to relieve it. Judge SELDEN carefully considered the question whether both parties to the contract were to be regarded not only as *particeps criminis,* but also *in pari delicto.* He then cited *Jacques* v. *Golightly* (2 W. B. 1073) — which was an action brought to recover back money paid for insuring lottery tickets, the defendant having kept an office for insurance contrary to statute — wherein it was urged that the plaintiff being *particeps criminis* and having knowingly transgressed the public law, was not entitled to relief. The action was sustained, however, by a unanimous court, BLACKSTONE, J., saying, " These lottery acts differ from the stock jobbing act of 7 Geo. II, Ch. 8, because there both parties are made criminal and subject to penalties." Judge SELDEN then said : " The rule here suggested for determining whether the parties are *in pari delicto* seems reasonable and just. There are, undoubtedly, other cases in which the parties are not equally guilty ; but it is safe to assume that whenever

the statute imposes a penalty upon one party and none upon the other, they are not to be regarded as *par delictum.*" This statement by the learned judge was followed by the consideration of many authorities in England and in this country, every one of which tended to support the test applied by the court for the purpose of determining whether the parties were *in pari delicto.*

The application of that test to this case establishes the plaintiff's right to recover, for this statute was leveled against attorneys and counselors, to the ranks of which this defendant belonged, and, therefore, it operated directly upon him, but did not in terms prohibit plaintiff from making such a contract ; therefore, it must be held upon the authority of *Tracy* v. *Talmage* (*supra*) and the many cases cited there, that this plaintiff is not *in pari delicto* with the defendant, and, hence, the courts may interfere in his behalf. And, clearly, the courts should do so, for, according to the complaint it appears that his customers consented that he should make an arrange ment with an attorney by which a share of the profits resulting should go to him, and as the proceedings were to be instituted in the United States courts, or before some department of the United States government, it was not necessary that he should employ one who was an attorney and counselor at law in the courts of this state, against whom the statutes of this state would operate, but instead he might have employed attorneys and counselors in the United States courts who were not members of the bar of this state, in which event our statute would not have operated on either party to the contract.

The complaint does not allege that defendant is an attorney and counselor at law of this state, and the demurrer might well be overruled upon that ground ; but we have preferred to rest our decision upon the broader ground that this defendant cannot invoke his violation of law for the purpose of retaining moneys which he agreed plaintiff should have, and but for which agreement would not have come into defendant's possession.

The doctrine of *Tracy* v. *Talmage* (*supra*), so far as applicable to this case, has since been followed in a number of well-considered cases, such as *Curtis* v. *Leavitt* (15 N. Y. 1); *Sackett's Harbor Bank* v. *Codd* (18 N. Y. 240); *De Groff* v. *American Linen Thread Co.* (21 N. Y. 124), and *Oneida Bank* v. *Ontario Bank* (21 N. Y. 490).

Our attention has not been called to any authorities in this court criticising in anywise the position taken in *Tracy* v. *Talmage* (*supra*). *Leonard* v. *Poole* (114 N. Y. 371) is a very different case, for the persons interested in those transactions were all of them, under the statutes of this state, engaged in a conspiracy to commit an act injurious to trade or commerce, and the contract under which they were proceeding was *malum in se*, and, hence, presented a situation in which the courts would refuse relief to any of the parties to it, as was said in *Tracy* v. *Talmage.*

The same is true of *Goodrich* v. *Houghton* (134 N. Y. 115), for there the plaintiff and defendant had jointly purchased a lottery ticket, which purchase was forbidden by law.

The judgments below should be reversed, with costs in all the courts, the demurrer overruled and the defendant allowed to answer within twenty days on payment of costs.

Gray, O'Brien, Bartlett, Haight, Martin and Vann, JJ., concur.

Judgment reversed, etc.