[No. 24113. *En Banc.* February 24, 1933.]

JOE GOODIER, *Appellant,* v. STEVE H. HAMILTON *et al., Respondents.*[1]

*Merrick & Kelly,* for appellant.

*Philip Tworoger,* for respondents.

MILLARD, J.—It was the desire of Steve H. Hamilton, who owned an interest in an auto freight business operating between Wenatchee and Seattle, to enlarge the business and to secure a certificate of convenience and necessity from the state department of public works. He consulted two attorneys, one of whom is a specialist in the public utility field of law, but was unable to obtain the authorization he sought.

Hamilton stated to Joe Goodier, an insurance agent who had sold Hamilton insurance on some of the trucks used in the Hamilton auto freight business, that he would pay to Goodier one thousand dollars if Goodier "would take him to the party who would be able to secure that franchise for him." Goodier introduced Hamilton to an attorney who applied to the depart-

[1] Reported in 19 P. (2d) 392.

ment of public works for a certificate of convenience and necessity authorizing Hamilton to haul freight by auto truck between Wenatchee and Seattle. The certificate was granted. On appeal to the superior court, the order of the department was affirmed.

Hamilton refused to accede to Goodier's demand for payment to him of the promised one thousand dollars, whereupon Goodier instituted this action to recover judgment therefor. The cause was tried to the court, which found:

"That the defendant Steve H. Hamilton acquired an interest in a freight hauling line between Wenatchee and Seattle; that he desired to secure a certificate of necessity from the Board of Public Works of the State of Washington; that he had talked with two different attorneys and that he had not been able to secure their assistance in prosecuting an application for a franchise; that he was acquainted with the plaintiff, who was and is an insurance agent in the city of Seattle, and who had sold him insurance on some of the trucks that were being used in the freight hauling business. That he told the plaintiff that he would be willing to give $5,000. for a certificate of necessity and that if the plaintiff would take him to an attorney who could secure the franchise for him, that he, the defendant, would pay the plaintiff the sum of $1,000. That the plaintiff made inquiry and recommended an attorney in the city of Seattle to the defendant and took the defendant to the said attorney's office and introduced him. That this attorney duly presented the application for franchise to the board of public works of the state of Washington; that the application for certificate of necessity was granted, and the matter was thereupon appealed by persons objecting to the granting of the franchise to the superior court of the state of Washington, for Thurston county, and the action of the board sustained."

The court concluded that the contract was illegal and void, and entered judgment dismissing the action. Plaintiff has appealed.

 The contract was *contra bonos mores*. The oral agreement of the parties was one of corrupt tendency. It tended clearly to destroy the public confidence in the purity of the administration of the law, hence was void as against public policy.

"The term 'public policy', . . . embraces all acts or contracts which tend clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel." 6 R. C. L. 712.

The necessary inference to be drawn from the agreement is that the attorney with whom appellant was acquainted was one who would be employed by the respondent because of influence which such attorney or his friends had with those (members of a quasi-judicial board) who were charged with the duty of deciding whether certificates of necessity should be granted; that is, appellant agreed to secure an attorney whose personal or political influence would influence the board of public works to favorably act upon respondent's application for authorization to operate an auto freight line between Wenatchee and Seattle. That is the only reasonable inference to be drawn from the fact that the agreement provided for contingent compensation—payment of one thousand dollars only in the event the attorney selected by appellant succeeded in obtaining the certificate for respondent. The striking feature of the agreement was that the compensation to be received by the appellant was contingent upon his finding a lawyer who would achieve success where two other reputable attorneys had either failed or refused to act. Such contracts suggest the use of secret or sinister influence on public officers.

In determining whether a contract is contrary to

public policy, the test is not merely what the parties actually did, or contemplated doing, in order to carry out the contract, or even the actual result of its performance, but, rather, whether the contract as made has a tendency to evil.

"In determining whether a given contract contravenes public policy, the test is not always nor necessarily what acts the parties performed or contemplated, in order to fulfill their agreement, or its actual result, but rather whether its tendency is evil." *Oliver v. Wilder*, 27 Colo. App. 337, 149 Pac. 275.

It does not appear, it is not even hinted, that the attorney retained by respondent used, or that it was contemplated that he would use, improper means to obtain the authorization sought by respondent. However, the agreement of the parties is of such a nature that such means might have been used. It is within the realm of contemplation that a contract of this nature would readily suggest to one desirous of securing a highly compensatory result, to employ means which the law, good morals and public policy do not sanction. To anticipate and prevent a subversion of a proper administration of justice, the law should make it impossible for any such temptation to be carried into fruition by condemning a contract that contains the germ of possible corruption.

Failure to condemn the contract in the case at bar would imply approval of a brokerage in lawyers' services. An agreement by an attorney to divide fees with a third person, if the latter will procure employment for the former, is contrary to public policy and void. 2 R. C. L. 1045. Such contract is not distinguishable in principle from the agreement on which appellant seeks to recover.

Where, as in the case at bar, the agreement suggests the use of sinister and corrupt means for the accom-

plishment of the end desired, ''The law meets the suggestion of evil, and strikes down the contract from its inception.'' *Tool Co. v. Norris,* 69 U. S. 45.

The judgment is affirmed.

PARKER, TOLMAN, MITCHELL, STEINERT, and BLAKE, JJ., concur.

HOLCOMB, J. (concurring in the result)—I concur in the result, but do not concur in the following reflections in the prevailing opinion:

''The necessary inference to be drawn from the agreement is that the attorney with whom appellant was acquainted was one who would be employed by the respondent because of influence which such attorney or his friends had with those (members of a quasi-judicial board) who were charged with the duty of deciding whether certificates of necessity should be granted; that is, appellant agreed to secure an attorney whose personal or political influence would influence the board of public works to favorably act upon respondent's application for authorization to operate an auto freight line between Wenatchee and Seattle. That is the only reasonable inference to be drawn from the fact that the agreement provided for contingent compensation. . . . Such contracts suggest the use of secret or sinister influence on public officers.''

To my mind, there is no more a necessary inference that political or personal influence would be brought to bear upon the board of public works than that superior experience, skill and ability would bring about the favorable action of that board. The only fair implication is that both the attorney employed and the members of the board exercised their duties in accordance with law and their honest judgments. Such is always the presumption.

BEALS, C. J. (dissenting)—I am unable to find in the contract which the trial court found that the parties

entered into, any of the sinister elements detected by the majority. Surely, a man may ask his friend for advice concerning the proposed employment of a professional man, and the gratuitous giving of such advice in response to a request is entirely proper. If the friend whose opinion is sought is asked to devote some time and effort to acquiring information which may render the advice to be given of greater value, why cannot he receive compensation for the time expended?

Appellant did not stir up litigation. Clearly, it appears from the record that the original proposition came from respondent, who already had in mind the proceeding which he desired to institute. While it is true that the consideration offered by respondent was very considerable, he fixed the amount himself, and cannot now complain if the court takes him at his word. If an attorney could handle the proceedings upon a contingent basis, I see no reason why appellant's compensation could not also be contingent upon the successful issue. As stated in the majority opinion, there is not the slightest intimation that any of the parties concerned were to achieve the desired ends by improper means. Neither was it contemplated that appellant would render any service which he was not, under the law, competent to render.

A contract will not be held void as against public policy if by any reasonable construction it can be upheld, and unless it clearly appears that the contract is prejudicial to the public interest. *Electrova Co. v. Spring Garden Ins. Co.*, 156 N. C. 232, 72 S. E. 306, 35 L. R. A. (N. S.) 1216; *Virginia Bridge & Iron Co. v. Crafts*, 2 Ga. App. 126, 58 S. E. 322; *State ex rel. Hunt v. Okanogan County*, 153 Wash. 399, 280 Pac. 31, 67 A. L. R. 668; *Baumhoff v. Oklahoma City, etc.*, 14 Okla. 127, 77 Pac. 40.

Appellant made no agreement to share the expenses of the litigation, nor was any portion of the proceeds thereof to go to him. The elements of champerty, maintenance and barratry are therefore entirely wanting. To me, the inference which the majority hold must necessarily be drawn from the agreement, to the effect that the attorney recommended by appellant would be so recommended by appellant because of some supposed improper influence which that attorney could bring to bear, nowise follows from the facts disclosed by this record.

For these reasons, I dissent from the conclusions reached by the majority.

MAIN, J., concurs with BEALS, C. J.