[No. 26352. Department Two. May 4, 1937.]

V. R. WRIGHT, *Respondent*, v. A. N. CORBIN *et al.,* *Appellants.*[1]

*A. N. Corbin* and *R. E. Young,* for appellants.

*R. L. Clinton,* for respondent.

[1]Reported in 67 P. (2d) 868.

HOLCOMB, J.—Respondent brought action against appellants, Biles-Coleman Lumber Company, a corporation, and Sam R. Sumner and wife, on an oral contract for the payment of twenty-five dollars a day, together with expenses, for twenty-three days as an expert witness for Biles-Coleman Lumber Company in its action against Washington Water Power Company, in Okanogan county. Judgment was asked against the Biles-Coleman Lumber Company, Sam R. Sumner and A. N. Corbin individually, and the communities composed of each individual.

Appellants answered separately, denying that Sam R. Sumner was ever authorized or had any authority to employ witnesses and charge the same to the account of appellants. They further averred that it was agreed between appellants and the Biles-Coleman Lumber Company that all witness fees were to be paid by the lumber company, and that Mr. Sumner was never authorized to employ any witnesses whatever.

On the above issues, as to appellants, the case went to trial to the court without a jury, and judgment was entered as prayed for in the complaint.

According to the undisputed testimony of the president of the lumber company and appellant A. N. Corbin (hereinafter designated as the sole appellant), Corbin was employed by that company on a contingent fee basis as its attorney to bring the action against the Washington Water Power Company in Okanogan county, the lumber company agreeing to pay all witness fees and appellant to pay actual court costs. Shortly before the complaint was filed in the case, appellant hired attorneys Sam R. Sumner (defendant) and Harvey Davis to assist him with briefing and trying the case, agreeing to pay them a certain percentage of his fee, and both appeared as attorneys of record in the case.

Respondent testified that the agreement between him and Sumner was that he was to get twenty-five dollars a day and expenses, and if a favorable verdict was recovered, he was to receive an additional twenty-five dollars a day. The president of the Biles-Coleman Lumber Company and Mr. Sumner both testified that, in their conferences with respondent, appellant was not present. No one contends that either of appellants was present when the alleged contract was made. Appellant's testimony is undisputed that he never employed Mr. Sumner, nor any one else, to hire witnesses and charge the expenses to him, and that his contract provided that he was to pay actual court costs and the lumber company was to pay witnesses. Respondent never presented any statement to appellant, and appellant never knew he was to receive additional compensation until about the time the present suit was commenced.

A few hours before the case against the Washington Water Power Company went to the jury, respondent presented a bill for services to the president of the lumber company for twenty-three days at twenty-five dollars per day, plus expenses. At the time that payment was made, he gave the president a receipt for the amount paid. The bill rendered was for $639.13, less three payments amounting to $100, leaving a balance of $539.13.

The trial court found, upon undisputed evidence, that Biles-Coleman Lumber Company was awarded a judgment against the Washington Water Power Company on September 29, 1934, in Okanogan county for $247,355.40. That judgment was compromised, settled and satisfied by a payment of $125,000 to the lumber company by the Washington Water Power Company. The court further found:

"That in conformity with the agreement made with the plaintiff by the defendant Sam R. Sumner, at-

torney for the Biles-Coleman Lumber Company, the Biles-Coleman Lumber Company did at the conclusion of the cause between Biles-Coleman Lumber Company and Washington Water Power Company, pay this plaintiff the sum of $639.40, which constituted the $25 per diem for a period of 23 days, which was the period for which plaintiff rendered his services to the defendant Biles-Coleman Lumber Company as such expert witness and technical adviser, the balance of the payment being the amount of expenses which plaintiff had incurred.

"That since that date and since the collection of the judgment by Biles-Coleman Lumber Company from the Washington Water Power Company as hereinabove alleged, plaintiff has made demand upon the defendants for the payment of the additional sum due him for the 23 days service rendered by plaintiff to the defendants at their special instance and request as per their agreement, said sum being in the amount of Five Hundred Seventy-Five Dollars ($575). That the defendants A. N. Corbin and Biles-Coleman Lumber Company have refused to pay any part of the balance of the fee due plaintiff for his services.

"That it was understood and agreed by and between R. L. McNett, president of and acting for the Biles-Coleman Lumber Company, a corporation, defendant, and Sam R. Sumner, defendant, for and on behalf of himself and A. N. Corbin, defendant, that Sam R. Sumner, and A. N. Corbin, attorneys, would pay the $25 per diem additional as witness fees to the said V. R. Wright, plaintiff, in the event said Biles-Coleman Lumber Company recovered judgment in said suit of Biles-Coleman Lumber Company against the Washington Water Power Company."

In conformity therewith, judgment was entered on March 10, 1936, against all of the defendants in this action for the sum of $575, interest and costs.

A preliminary matter to determine is a motion made by respondent to dismiss the appeal upon the showing that the judgment made and entered was, on May 18, 1936, fully paid, settled and satisfied of record in the

office of the county, as shown by a certified copy of the satisfaction of the judgment attached thereto; that defendant Sam R. Sumner paid $150 to respondent, the remaining amount due on the judgment was paid by Biles-Coleman Lumber Company, defendant, and that no payments were ever received from appellant. It is therefore urged that, by reason of the voluntary payment and satisfaction of the judgment by Sam R. Sumner and the Biles-Coleman Lumber Company, the controversies set forth in appellant's appeal have become moot questions.

It is also asserted that no question of the illegality of the contract between respondent and appellant was ever raised in the lower court for decision, and that no controversy between appellant and Sam R. Sumner and the Biles-Coleman Lumber Company as to contribution *inter se* can be settled on this appeal, as Sumner and the lumber company are not before this court; and that the indebtedness between respondent and appellant has been fully paid, settled and satisfied of record.

No brief has been submitted by respondent on the merits in this case, he apparently having implicit confidence that the appeal will be dismissed.

To support his motion, respondent cites: *State ex rel. Case v. Mead*, 52 Wash. 533, 100 Pac. 1033; *Wilson v. Fraser*, 67 Wash. 347, 121 Pac. 829; *Vollman v. Industrial Workers of the World*, 79 Wash. 192, 140 Pac. 337; and *State ex rel. Sutton v. Hartley*, 171 Wash. 607, 18 P. (2d) 840. The above cases are inapt.

*State ex rel. Case v. Mead, supra,* was a case where a major in the state militia was reprimanded by a court martial, but suffered no loss of rank or seniority. Hence, he was not injured. The *Wilson* case, *supra,* was an action to determine the title to a certain office, the term of which had fully expired prior to the time

of hearing on appeal, in which the controversy had, of course, become moot. In the *Vollman* case, *supra,* it was admitted by counsel for appellants that the controversy had ceased. Hence, there was nothing for this court to decide. The case of *State ex rel. Sutton v. Hartley, supra,* involved a mandamus action by a senate committee to compel the governor to produce certain books. At the time of hearing on appeal, the Governor's term of office had expired and the senate committee had ceased to exist. The controversy was ended.

In the case at bar, it is manifest that Sumner and wife might have confessed judgment before the trial of this action, which would not have bound this appellant. If for reasons of their own they desired to pay the balance of the judgment, they could not bind this appellant thereby.

While not exactly in point, *Utterback v. Meeker,* 16 Wash. 185, 47 Pac. 428, has some bearing upon this matter in principle. That case holds that one defendant, by complying with the decree of the trial court, cannot bind the codefendants so as to render the codefendants' appeal subject to dismissal.

4 C. J. S. Appeal and Error, 411, § 214, states:

". . . the payment of an uncontested amount; or an act or payment made by one whose act is not binding upon appellant. The fact that defendant has executed the judgment is no ground for dismissal of an appeal taken by a third person; . . ."

And, again, Id., 1956, § 1354:

"A partial compliance with the judgment or order will not, however, warrant a dismissal; nor will payment by someone other than defendant, although there is authority to the contrary; nor will the payment of the judgment by one of several parties against whom it is rendered justify a dismissal."

In *Battersby v. Gillespie,* 57 N. D. 426, 222 N. W. 480, that court held that a motion to dismiss an appeal on the ground that the judgment appealed from has been paid and satisfied will be overruled, when it appears from the record that the defendant Gillespie and his attorneys did not pay or authorize the payment of the judgment, and, if paid, was without the knowledge, consent or approval of the appellant or his attorneys, the judgment still standing of record against the appellant.

Appellant is in that situation here.

The motion to dismiss the appeal is denied.

Appellant assigns five errors argued in three groups. No error is assigned based on any of the findings except the two hereinbefore set out.

There is probably much merit in the contention that no evidence was introduced to show either express or implied authority by appellant to Mr. Sumner to enter into any contract binding appellant for the payment of the witness fees, for which reason that finding is not correct. That probably is true. We prefer, however, to base our decision in this case upon a question urged by appellant which is:

"Will the courts enforce an agreement whereby an expert witness, employed to testify in a cause, is to receive a certain fee only in the event that his employer is successful in that cause?"

The contention of respondent, in his brief on his motion to dismiss the appeal, that this question was never raised nor presented to the lower court by appellant, is untenable. Such a question can be raised at any time and at any stage of the case, when it has been made to appear that a contract is illegal and unenforceable. *Reed v. Johnson,* 27 Wash. 42, 67 Pac. 381, 57 L. R. A. 404; 13 C. J. 507, § 455.

██ "No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. . . . The law in short will not aid either party to an illegal agreement; it leaves the parties where it finds them. The general rule is the same both at law and in equity, and whether the contract is executory or executed." 13 C. J. 492, § 440.

Under the above text, there are cited literally hundreds of cases from every jurisdiction in the United States and many from Canada and England.

This court has set itself against the enforcement of an illegal contract. *Eggleston v. Pantages,* 103 Wash. 458, 175 Pac. 34; *Goodier v. Hamilton,* 172 Wash. 60, 19 P. (2d) 392.

The question then remains whether such a contract as this is an illegal contract. We have no hesitancy in saying that, under the great weight of authority, such a contract, to pay a witness in the event that the suit terminates in favor of the promisor, is not only void as concerning ordinary witnesses, but also void as concerning experts. See cases cited in note VI, *Wood v. Casserleigh,* 30 Colo. 287, 71 Pac. 360, 97 Am. St. 138. In that case, it was held that, before a contract can be declared illegal because against public policy, it must clearly appear to be obnoxious to the pure administration of justice, or manifestly injurious to the interest of the public; if one has collected evidence under a contract of employment which does not render his compensation contingent upon the character of the evidence procured nor upon the result of any action in which it may be used, a subsequent contract by him to furnish that evidence to the plaintiff in an action in consideration of a speci-

fied interest in the amount recovered, is not void as against public policy.

The contract now before us is a contract of employment where respondent made his compensation double, contingent upon the result of the action.

The Michigan supreme court in *Sherman v. Burton,* 165 Mich. 293, 130 N. W. 667, 33 L. R. A. (N. S.) 87, a case where an agreement was made with a doctor whereby he was to receive one third of any sum received as damages from a railroad company, the defendant's case was settled out of court, and the doctor brought an action on the contract. That court denied recovery and, among other things, said:

" 'The contract must be measured by its tendency, and not merely by what was done to carry it out.' "

See notes to the opinion in the above cited case. See, also, annotations, 16 A. L. R. 1464; *Miller v. Anderson,* 183 Wis. 163, 196 N. W. 869, 34 A. L. R. 1529, and cases in note thereto; *Keown & McEvoy v. Verlin,* 253 Mass. 374, 149 N. E. 115, 41 A. L. R. 1319, and cases there cited and notes thereto. In the last cited case, that court held that the question of the legality of a contract to furnish evidence and attend a lawsuit is before the court in an action to recover upon it, although not questioned in the pleadings. It is also there held that every competent citizen is under an obligation to further the administration of justice as a matter of public policy when summoned by due process of law to give evidence.

We have no doubt that the contract before us is against public policy and sound morals and not to be enforced. It is a well settled principle of law that agreements against public policy and sound morals will not be enforced by the courts. *Delbridge v. Beach,* 66 Wash. 416, 119 Pac. 856, and cases cited; *Duteau v. Dresbach,* 113 Wash. 545, 194 Pac. 547, 16

A. L. R. 1430, and cases cited. In the last cited case, we quoted approvingly from the former case of *Lewer v. Cornelius*, 72 Wash. 124, 129 Pac. 911, saying:

" 'A court will not knowingly aid in the furtherance of an illegal transaction. And in harmony with this principle, it does not concern itself as to the manner in which the illegality of a matter before it is brought to its attention.' "

The judgment against appellants is therefore reversed, and remanded with instructions to dismiss the action against appellants.

STEINERT, C. J., BEALS, TOLMAN, and ROBINSON, JJ., concur.