Maurice H. VAN BERGH, Plaintiff-
Appellant,

v.

Gustave SIMONS, Defendant-Appellee.

No. 149, Docket 26380.

United States Court of Appeals
Second Circuit.

Argued Jan. 3, 1961.

Decided Feb. 7, 1961.

David Alter, New York City (Hubert Thurschwell, Squadron, Alter & Weinrib, New York City, on the brief), for plaintiff-appellant.

W. Philip Van Kirk, New York City, for defendant-appellee.

Before LUMBARD, Chief Judge, and SWAN and WATERMAN, Circuit Judges.

LUMBARD, Chief Judge.

This appeal turns on whether, under New York law, a layman can enforce an alleged agreement with a lawyer, whereby the lawyer promised to turn over 25% of all fees received from a client for the

prosecution of an excess profits tax refund claim in return for the layman's efforts in procuring the client and his promise to be available if called upon to help in preparing the claim. The question was presented to the District Court for the Southern District of New York on the complaint, the answer, and the depositions of both parties, by the defendant's motion for summary judgment on the ground that the contract was illegal under governing New York law. Judge Murphy, agreeing that it was illegal and therefore unenforceable, granted summary judgment for the defendant, whereupon the plaintiff appealed.

Viewed in the light most favorable to the plaintiff, the complaint and the depositions tend to establish an oral agreement in April 1946 between Maurice H. Van Bergh, a layman, and Gustave Simons, a lawyer specializing in tax matters. The terms of the agreement were that if Van Bergh procured Textileather Corporation as a client for Simons, Van Bergh would receive from Simons 25% of all fees received by Simons from Textileather for procuring a refund of excess profit taxes.[1] Van Bergh testified:

"The first service that I was to render was the introduction of Mr. Simons as a competent attorney for the handling of tax matters. And that in itself, namely, the introduction, was all that I was specifically required to do."

In addition, it was agreed that Van Bergh, a consultant in industrial and economic matters, would be available for such services as he might render "as a consultant and as an economist." This portion of the agreement was reflected in an office memorandum prepared by Simons on November 14, 1946, which said that "Maurice Van Bergh is collaborating with us in this case, and therefore have him participate to the

1. Simons' fee was to be 25% of any recovery up to $500,000 and a decreasing percentage of any further amounts. It was estimated that Textileather would recover between $200,000 and $600,000.

extent of his convenience and availability in the economic aspects of this study."

In fact, Van Bergh's work on the case was limited to his introduction of Simons to the client as he did nothing whatever thereafter although he testified that he was always "available."

In December 1946, Van Bergh billed Simons for $531.25 for "Service Rendered in Connection with Textileather Corporation to date," which sum was paid. The record before us contains no explanation of how this amount was arrived at or what the "service" consisted of. In our view of the case, the fact that Simons may have paid Van Bergh some part of a fee in 1946 has no bearing upon the merits of Simons' defense of illegality as to any moneys that are now claimed.

Simons defends on the ground that the contract, if made as Van Bergh claims, violated New York Penal Law, McKinney's Consol.Laws, c. 40, § 276 and that the agreement is therefore unenforceable.[2] Section 276, in its pertinent words, makes it a misdemeanor for "any person * * * to divide with * * * any attorney at law * * * any portion of any fee or compensation * * * in consideration of having placed, in the hands of such attorney at law * * * a claim or demand of any kind for the purpose of collecting such claim, or bringing an action thereon, or of representing [a] claimant in the pursuit of any civil remedy for the recovery thereof."

Van Bergh violated the statute when he bargained for 25% of Simons' fee in return for procuring Textileather as a client. Even if the parties also contemplated that Van Bergh would contribute consultative services, none of which were in fact given, the agreement, which was in no way separable, would be illegal.

Van Bergh's compensation was expressed as a percentage of Simons' fee. This is itself some evidence that the compensation related primarily to the procurement of Simons' employment and did not relate to anticipated consultative services that might or might not ever be performed and whose value and extent were entirely speculative. Moreover, it is clear that consultative services were never rendered and were wholly non-existent. Obviously, if an alleged further agreement to be available for other services could legitimize contracts primarily based upon illegal procurement of claims, the statute could be circumvented at will.

It is also clear that as a consequence of this illegality the agreement is unenforceable. Mendelson v. Gogolick, 2d Dept. 1934, 243 App.Div. 115, 276 N.Y.S. 158; Matter of Martin's Estate, 1941, 178 Misc. 43, 33 N.Y.S.2d 81. Earlier cases, such as Irwin v. Curie, 1902, 171 N.Y. 409, 64 N.E. 161, which permitted laymen to recover from lawyers on similar contracts, are not in point since, as the court pointed out in Gogolick, the statutes have been expanded to make illegal laymen's as well as lawyers' activities in procuring claims. Section 270 of the New York Penal Code was amended in 1917 (L. 1917, C. 783) to make it illegal for laymen to "furnish * * * an attorney * * * to render legal services." If any possible doubt remained with respect to fee splitting with laymen who procured legal business, it was set at rest by § 276, as quoted above, which was enacted in 1935 (L. 1935, C. 577).

The alleged contract providing for 25% of the attorney's fee in exchange for procuring the client was void as it was in violation of the laws of New York and contrary to its expressed public policy; such a contract will not be enforced.

Affirmed.

2. The parties agree that New York law controls. Van Bergh resided and had his office in New York; Simons was and is a New York lawyer and had his offices in New York; from all that appears New York was the place where most of Simons' work was to be done, as it was also the situs of Van Bergh's activities.