G-eobge Tilzeb, J.
At the start it must be noted that pursuant to application made on the return day by Louis J. Paley, Esq., the New York County Lawyers’ Association was granted leave to appear amicus curice in support of defendants’ motion for summary judgment.
Pursuant to further request of Hugo E. Rogers, Esq., the Association of the Customs Bar was also granted leave to file a brief amicus curice in support of the motion to dismiss the complaint.
The issue presented in this case is whether customhouse brokers may share in the contingent fees paid to attorneys by importers for legal services rendered in recovering excessive import duties.
The plaintiff is a customhouse broker. The defendant McDermott is an attorney at law, the surviving partner of Brooks & Brooks, a firm of customs lawyers. Since 1951, the plaintiff had acted as customs broker for defendant Amity Fabrics, Inc., and its predecessor corporation. Since 1952, Brooks & Brooks had had a retainer arrangement with the various Amity corporations, providing for a contingent fee, in customs rebate cases, of 50% of any recovery. Commencing in the year 1955, Amity and other importers paid duties on certain *52 imported velveteen cloth. Plaintiff believed that these goods should have been classified under a different paragraph of the Tariff Act of 1930, which would have made them dutiable at a lower rate. Accordingly, plaintiff referred the problem to Brooks & Brooks, as attorneys, pursuant to a long-standing implied agreement and custom known to and approved by Amity, under which the attorneys agreed to divide equally with the plaintiff their contingent fee, if, and when a refund was obtained from the Government. Brooks & Brooks’ contingent fee, so far as these velveteens were concerned, was modified in March of 1955, at plaintiff’s suggestion, the attorneys agreeing with Amity to reduce their fee from 50% to 33%% of refunds in excess of $20,000.
Brooks & Brooks filed a series of protests in the United States Customs Court, running through March, 1960. As a result, refunds from the Government became due and payable to Amity, and on the basis of the retainer between Brooks & Brooks and Amity, there became due and owing to Brooks & Brooks total fees in the sum of $18,770.21, of which $13,329.41 was paid, and $5,440.80 remained unpaid. Plaintiff has demanded of Brooks & Brooks its share of said fees ($6,660.71) and has demanded of Amity one half of the sum still owed by that defendant ($2,720.42), but its demands have been refused. Amity has not appeared form'ally in the action. Its president, however, has submitted an affidavit in support of plaintiff.
Both plaintiff and Brooks & Brooks, or McDermott, as defendant will hereafter be called, move for summary judgment.
Plaintiff’s basic position is that the division of the fee between customhouse broker and attorney was pursuant to a time-honored method by which the broker was compensated for a wide range of important services performed for the importer. Defendant’s short answer is that the agreement sued upon is one to divide attorney’s fees for the procurement of a claim and is contrary to the public policy of the State of New York, illegal and unenforcible.
The sharing of fees was standard practice in the field of customs law. There was nothing clandestine about it; the importing fraternity enjoyed the benefits of it; and the Treasury Regulations (Code of Fed. Reg., tit. 19, § 31.10, subd. [n]) acknowledged it. The practice was accepted by the Court of Appeals some 60 years ago (Invin v. Curie, 171 N. Y. 409) and was defended 30 years ago by the Association of the Customs Bar as “ not within the mischief at which the common-law rules against champerty, maintenance and barratry are directed ”. McDermott’s own firm had been paying fees to the plaintiff for *53 at least 50 years prior to 1959. However, in October of 1958, by virtue of action taken by the New York County Lawyers’ Association and the Association of the Customs Bar, the latter’s by-laws were amended by adopting the Canons of Professional Ethics of the American Bar Association and enlarging canons 34 and 35 so as to prohibit the practice of customs lawyers sharing fees with customs brokers. A grace period of one year was provided. It was McDermott’s refusal to share fees with the plaintiff, derived from business which came to fruition after the close of the grace period, which gave rise to plaintiff’s action.
We are thus asked to pass judgment on a way of life which has existed for many years; to say whether a procedure established by long tradition shall continue or whether it should be condemned as contrary to the law and policy of this State. We are fully cognizant of the implications of any holding by this court, one of plaintiff’s partners having said that if the brokers are no longer to get their portion of the fees from the attorneys, then it inevitably means that there will be a revolution in the brokerage industry. May we say, further that we appreciate the specialized services performed by customhouse brokers in the administration of the Tariff Act. We realize that the business of the broker encompasses far more than the entering and clearing of goods, concerning which the broker receives a fee for each shipment; that an importer relies upon his broker for suggestions and advice as to every phase of an import operation. The business of customhouse broker, it has been said, is one demanding “ a sense of responsibility and skill ”, and a license is issued to engage in such business only after an applicant has satisfied the Treasury Department of his knowledge of customs law and procedure and his fitness to render valuable service to importers and exporters (Union Brokerage Co. v. Jensen, 322 U. S. 202, 204, Frankfurter, J.). Certainly, in his referral of customs claims the customhouse broker may not be equated with the ambulance chaser. This is not to say, nevertheless, that the practice is a salutary one or that it is not violative of law.
The statutes of our State have undergone expansion since Irwin v. Curie (supra) was decided 60 years ago (Mendelson v. Gogolick, 243 App. Div. 115). The Irwin case was based on a statute which penalized attorneys only for fee-splitting arrangements. The theory of Irwin was that the layman was an innocent party who might be aided by the courts. But, in 1917, section 270 of the Penal Law was amended to make it illegal for laymen to “ furnish attorneys * * * to render legal services”. And, in 1935, the Legislature enacted section 276 of the Penal Law, which makes it a misdemeanor for any person, other than an *54 attorney, to agree to share, or to share, legal fees as an inducement to the placing of a claim in an attorney’s hands. While the plaintiff, in support of its motion, urges that the customhouse broker “ is a kind of limited lawyer and, In every sense, he is a professional man ”, the law does not recognize such quasi-lawyer status as an exception to the Penal Law. There is but one exception in the statute — the right of attorneys to agree to divide the compensation to be recovered. A plaintiff must bring himself squarely within that exception. “ The statute expressly recognizes the right of attorneys to agree to divide the compensation to be recovered. That is the only exception provided for in section 275-a [renum. 276]. The rule is well settled that where one relies upon an exception in the statute to take his case out of the rule laid down in the body of the statute, the person insisting upon the exception must bring himself within it. If the plaintiff in an action on agreement with an attorney for the division of fees desires to avail himself of the exception, he must show that he is an attorney.” (Baldwin v. Lev, 163 Misc. 929, 931.) Moreover, experience as a customhouse broker does not qualify the plaintiff to practice law. As was said by the Court of Appeals in the year 1910: “ The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. * * * No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts.” (Matter of Co-Operative Law Co., 198 N. Y. 479, 483.) True, a customhouse broker must possess a sense of responsibility and a knowledge of customs law and procedure. But, as Presiding Justice Peck stated in Matter of New York County Lawyers’ Assn. (Bercu) (273 App. Div. 524, 534-535, affd. 299 N. Y. 728): “ A layman may know a lot of law about a particular subject. * * * He may not, however, set himself up as a public consultant on the law of his specialty. * * * We are unable, therefore, to regard the admission of accountants, subject to certain qualifications and regulations of the Treasury Department and the Tax Court, to practice before those agencies, as an authorization to accountants to practice tax law at large or as an eradication of the distinction between the lawyer’s and the accountant’s function in the tax *55 field.” And, even with respect to the alleged “professional” status of plaintiff, the Court of Appeals has held: “We find nothing in the record to prove that the service rendered by a customhouse broker requires knowledge of an advanced type in a given field of science or learning gained by a prolonged course of specialized instruction and study. Such a requirement we regard as implicit in the term ‘ professional ’ when given its legal application.” (People ex rel. Tower v. State Tax Comm., 282 N. Y. 407, 412.) The customhouse broker is still a layman under section 276 of the Penal Law.
Nor can we accept the plaintiff’s argument that there is no violation of section 276 as the division of fees was not made as an ‘ ‘ inducement ’ ’ for placing business in the hands of the attorney, but was a method of compensating the broker for all of the services rendered to the importer. No one would deprive the broker of his right to compensation for services actually rendered. But compensation for services rendered to the importer should come from the importer and not from the attorney, particularly where the services rendered are not related to the prosecution of any case. Moreover, if we accept the plaintiff’s contention that the division of fees was to be compensation for services to the importer, necessarily the only service rendered to the attorney was the forwarding of the claim to him. On the other hand, if we assume that plaintiff did contribute services to the attorney in the prosecution of the claim, the agreement would still be illegal, for it was in no way separable. The fact, too, that the division was to be on a percentage basis points to the conclusion that the division has no relation to services rendered. (Van Bergh v. Simons, 286 F. 2d 325.)
But, assuming a violation of section 276 of the Penal Law, plaintiff insists, nevertheless, that it still must recover since the parties are not in pari delicto. The objection that a contract is illegal, it is true, comes with poor grace from the mouth of a defendant. Nonetheless, the court will not aid either of the parties to an agreement forbidden by law. (Baldwin v. Lev, supra, p. 932.) For that matter, McDermott has not violated section 276 in this case. Implementation of the agreement by this court, however, would be a violation by plaintiff and defendant. The fact that there may have been no intent on the plaintiff’s part to commit a misdemeanor is of course immaterial. An act malum prohibitum is not excused by good faith.
A guilty mind or corrupt purpose is not an essential element of a misdemeanor created by statute under the police power. All that is required for its commission is the intentional doing of the prohibited act itself, regardless of whether the doer *56 intended to commit the crime resulting from the intentional act. When one deliberately violates a positive law which he is presumed to know, he cannot be excused on the ground that he intended no wrong, or that his animating desire was essentially praiseworthy. (22 C. J. S., Criminal Law, § 30.)
And, despite plaintiff’s adherence to tradition as authority for the implied agreement sued upon, it is as true in 1962 as it was in 1934 that: ‘ ‘ The state of public opinion on the subject and the decisions of courts in respect thereto must have become so well known to laymen as well as lawyers that plaintiff may be held to have had knowledge of the illegality of the contract at the time it was made — both by the rule of general public policy and of the inhibition of the statute. [Penal Law, § 270.] ” (Mendelson v. Gogolick, 243 App. Div. 115, 118, supra.)
Finally, in an argument which, if it had any validity, would have been advanced first and would have made unnecessary the foregoing discussion, the plaintiff urges that it is exempt from the effect of any New York statutes prohibiting fee-splitting arrangements, since State law in this instance is superseded by Federal law. Reliance is placed upon subdivision (n) of section 31.10 of the Treasury Regulations (Code of Fed. Reg., tit. 19, § 31.10, subd. [n]), heretofore referred to, which requires that any customs broker, who has recommended an attorney to a client, must obtain his client’s consent before demanding from the attorney a share of his fee. (This section has been amended so as to prohibit fee-sharing [24 Fed. Reg. 4563 (1959)].) We do not agree with plaintiff that the effect of such regulation is to preclude any State from making it a penal offense for a customhouse broker to receive a share of the compensation paid for prosecuting claims before the customs tribunals. The regulation does not per se authorize and sanction forwarding fees for customs brokers. It does establish a rule that a customs broker must follow in the event that a fee-splitting arrangement with an attorney is otherwise permitted. The Commerce Clause of the Constitution of the United States does not deprive New York of its power to protect its citizens from unethical legal practices. (Union Brokerage Co. v. Jensen, 322 U. S. 202, 212, supra.)
The court concludes that the custom and tradition of sharing fees in this field is a pernicious practice which has too long endured. It permits of the control of attorneys by the customhouse brokers, leads to a breakdown in the attorney-client relationship, and gives to the unscrupulous broker the choice of an attorney based solely upon the percentage of the fee he will receive for referral of a claim. The implied agreement upon *57 which the plaintiff sues violates the Penal Law of this State and is illegal and uncnforcible. It is prohibited by rules 5 and 10 of the Special Rules Regulating the Conduct of Attorneys of the Appellate Division, First Department, and declared unethical by canons 34 and 35 of the Canons of Professional Ethics (American and New York State Bar Associations).
Defendants’ motion for summary judgment dismissing the complaint is granted.